# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* W. HERZIG, Minor.

UNPUBLISHED
October 6, 2016

No. 330918
Livingston Circuit Court
Family Division
LC No. 2011-013731-NA

Before: RIORDAN, P.J., and METER and OWENS, JJ.

PER CURIAM.

Respondent-appellant (hereinafter "respondent"), mother of the minor child at issue, appeals as of right from an order of the family division of the circuit court terminating her parental rights to the child.[1] We affirm.

This case began with a petition filed when the child was approximately one month old. The attached allegations included a summary of respondent's history with Child Protective Services (CPS), which had culminated in termination of her parental rights to two children approximately 2½ years earlier. The listing of current concerns set forth a recent term of incarceration, substance abuse, and mental health issues. The petition concluded with the recommendations that the child "be placed out of [the] home" and that "parental rights . . . be terminated." Respondent pleaded to many of the allegations in an amended petition, and the trial court assumed jurisdiction over the child.

Respondent challenges the court's assumption of jurisdiction with respect to her. "To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists." *In re BZ & KZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). This Court reviews the trial court's decision in that regard "for clear error in light of the court's findings of fact." *Id.*

MCL 712A.2(b) sets forth the criteria for a court's assumption of jurisdiction over a child in child-protection cases. Under subsection (b)(1), jurisdiction is proper over a child

> [w]hose parent or other person legally responsible for the care and
> maintenance of the juvenile, when able to do so, neglects or refuses to provide

---

[1] The court also terminated the father's parental rights, but he is not a party to this appeal.

-1-

proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

Subsection (b)(2) authorizes a court to assume jurisdiction over a child "[w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in."

In child-protection cases,

[a]lthough the respondents are free to admit the truth of the allegations and relieve the prosecutor of the need to put forth proofs, the admissions do not establish the court's jurisdiction. The court must make an independent determination of whether the allegations are sufficient to permit the court to assume jurisdiction over the matter. [*In re Youmans*, 156 Mich App 679, 684-685; 401 NW2d 905 (1986).]

On appeal, respondent protests that almost the whole case against her involved past events, most predating the child's birth. Petitioner correctly retorts that, under the doctrine of anticipatory neglect or abuse, past events relating to how a parent treated a child is competent evidence for purposes of determining the court's jurisdiction in a new child-protection case. See, generally, *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014). Respondent's admissions included her history with CPS, resulting in termination of her parental rights to two children. She admitted that she did not follow through with certain services pertaining to the earlier CPS case. Significantly, she admitted that she did not complete counseling and did not follow up with medication management for her mental health issues.

Respondent's admissions relating to the time of the subject child's birth and afterward included that, when the petition was filed, she lived with the child's father and with three other persons who were involved in criminality, CPS investigations, or substance abuse, and at the time knew of the father's criminal history as well as his outstanding warrants. Respondent further admitted that she had mental health issues as well as a history of substance abuse. Respondent acknowledged that she had been incarcerated for most of her pregnancy because of shoplifting, that she had difficulty following medical advice and appeared anxious, and that she had been observed by hospital staff outdoors in her hospital gown after having disconnected herself from an intravenous system and monitors. Respondent later clarified that she had been found outside wearing only her gown and with her "Foley bag" intact, that the latter was "like a catheter," and that "I had everything in me, my IVs, and everything. I never disconnected everything and I took it with me. I walked outside and smoked." Respondent admitted that a nurse reported that respondent had been given instructions on how to bathe her newborn but did not do so properly, because she was "holding [the baby] over the basin and the umbilical cord was wet[.]" Respondent additionally admitted telling a CPS worker upon the birth of the child that she was unemployed and had no income. Respondent acknowledged that she had been diagnosed with "anxiety, depression, severe bi-polar, borderline personality, and ADHD," for which she was prescribed several medications. Nevertheless, respondent agreed that recent drug screens were negative for all substances, including prescription medicines. She admitted

reporting that she was not taking her medications because of pregnancy and breastfeeding, but later stated that she was not breastfeeding.

A CPS worker testified at the plea hearing that she had learned during her investigation that respondent and the father had no income to support the child and no safe, stable housing. The worker also testified that respondent had been suicidal in December 2013.

We find no clear error in the trial court's finding that "the factual basis for the plea is established by testimony of . . . [the] parents and the [CPS] worker." The doctrine of anticipatory neglect was highly relevant in this case, where respondent lost her parental rights to other children in part because of a failure to address her mental health issues. Further, respondent had current and serious mental health issues that were not being properly treated. In addition, she had recently spent a significant period in jail, she admitted an absence of employment and income, and she resided with persons with troublesome issues. At a minimum, due to respondent's past and present issues, the child was "subject to a substantial risk of harm to his or her mental well-being," MCL 712A.2(b)(1), and had an unfit home, MCL 712A.2(b)(2).

Respondent argues that there was no basis for removing the child from the home under MCL 712A.14b.[2] Contrary to respondent's argument, she did not preserve this issue below; she made no objections to the issuance of the removal order. We review unpreserved issues for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

Respondent focuses her argument on the language in MCL 712A.14b indicating that an emergency removal pending a preliminary hearing can take place only if immediate removal is necessary to protect the child. She emphasizes that CPS workers allowed the child to live in respondent's home for approximately three weeks before removing him, stating that "waiting nearly three weeks to take action . . . makes a mockery of the concept of an emergency." We find no plain error on this record, for three independent reasons. First, according to respondent, the child was removed on February 12, 2015. The initial petition stated, along with various other allegations, that petitioner received, on that date (February 12, 2015), notes from a social worker regarding respondent's purported decision to breastfeed the child. This was important because it intertwined with respondent's need to take psychiatric medication.[3] It is plausible that this information was the final straw that pushed petitioner to take action regarding the emergency removal.[4] Second, respondent herself admitted during the preliminary examination that workers for petitioner had told her that they were performing an investigation before deciding whether to remove the child. This was a reasonable decision on the part of the workers. Finally, merely

---

[2] We note that the preliminary hearing commenced less than 3 ½ hours after the court made the MCL 712a.14b removal ruling.

[3] Respondent stated that "they didn't want me to breastfeed" because of her need to take medication.

[4] Respondent reported bottle-feeding the child on February 7, 2015, but there was, at least initially, a dispute over this issue, in light of the social worker's report.

because removal may have been warranted even earlier does not automatically mean that the removal that did occur was unwarranted. Given respondent's history and current issues, the removal decision was reasonable and no plain error is apparent.

Respondent next argues that the trial court erred in finding grounds to terminate respondent's parental rights. An appellate court "review[s] for clear error . . . the court's decision that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), superseded in part by statute on other grounds as recognized by *In re Moss*, 301 Mich App 76, 83 (2013); 836 NW2d 182 (2013). "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014). This Court must give regard to the trial court's special opportunity to observe the witnesses. *Id*.

MCL 712A.19b(3)(j) provides:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court had before it the pertinent information regarding respondent's prior CPS case that resulted in the termination of her parental rights to two other children. In that case, respondent demonstrated a serious problem with illegal drugs and problems with her mental health. She failed to make meaningful progress with services, and the trial court found a reasonable likelihood that the children would be harmed if returned to her care. In the present case, at the hearing on December 14, 2015, a foster-care worker, Shayna Chapman, testified that even though respondent had been prescribed medication for her mental health, she had many drug screens that tested negative for all substances. Chapman explained that this "raised [a concern] that . . . she wasn't taking the medication as prescribed[.]" Chapman also stated that respondent missed multiple screens and had not presented for a random screening since August 2015. In addition, respondent failed to follow the recommendations made after a psychological evaluation. According to Chapman, respondent claimed that she was involved in individual counseling, but could only provide the first name of the counselor, did not state where the counselor worked, and provided no documentation related to this counseling. Chapman further stated that respondent was not able to "take the cues from the baby" during parenting time and had missed a medical appointment for the child. Respondent had expressed an interest in online parenting classes but never followed up on it.

At the continued hearing on December 15, 2015, Chapman testified that in the earlier CPS case, respondent's parental rights had been terminated "because of serious and chronic

neglect." Chapman stated that, in the present case, there was a reasonable likelihood that the child would be harmed if returned to respondent's care.

Given respondent's CPS history, her failure to make progress with services in the prior case, her current mental health problems and failure to comply with treatment plans, the issues with her drug screenings, and the issues during parenting time, the trial court did not clearly err in finding that petitioner established the basis for termination set forth in MCL 712A.19b(3)(j) by clear and convincing evidence. "Only one statutory ground for termination need be established," *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012), and we therefore do not need to address the additional grounds cited by the trial court.[5]

Respondent argues that the trial court erred in determining that termination was in the child's best interests. An appellate court "review[s] for clear error . . . the court's decision regarding the child's best interest[s]." *In re Trejo Minors*, 462 Mich at 356-357.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In explaining its best-interests determination, the trial court noted that the child was 11 months old and doing very well in foster care. The court additionally noted that respondent had failed to comply with her service plan and had a "demonstrated inability" to put the needs of the child before her own. The court further stated that it was not in the child's best interests "to spend years in foster care to see when or even if his parents can be rehabilitated."

In arguing this issue, respondent does not attack these specific findings, but, consistent with how she framed this issue in the statement of questions presented for appeal, instead complains that she was stripped of her ability to establish a bond with the child because he was taken from her when only one month old. At issue, however, is whether the court correctly assessed the child's best interests, not whether the circumstances of the child's removal disrupted respondent's rights. Respondent is essentially asserting that, because she was deprived of an opportunity to establish a bond with the child, it was impossible to evaluate what sort of bond may have come about. However, respondent cites no authority for the proposition that a court cannot determine best interests in connection with a parent who, for whatever reason, has had no opportunity to establish a bond with a child.

Because respondent's argument leaves unchallenged the court's pertinent best-interests findings, respondent has failed to show that the trial court clearly erred in concluding that termination of her parental rights was in the child's best interests.

---

[5] We nevertheless briefly note that the record clearly and amply supported termination under MCL 712A.19b(3)(i), and respondent's argument pertaining to this subsection's constitutionality is unavailing.

Affirmed.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Donald S. Owens