# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. A. BRUCE, Minor.

UNPUBLISHED
May 22, 2018

No. 341091
Dickinson Circuit Court
Family Division
LC No. 16-000507-NA

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Respondent-mother appeals by right the October 24, 2017 order terminating her parental rights to her child, SAB, under MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions), MCL 712A.19b(3)(g) (failure to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to the parent).[1] Because of the discretion afforded trial courts to make these decisions, which is reflected by the deferential standard of review, we affirm.

Upon review of respondent's arguments and the trial court record, we conclude that the trial court did not clearly err in finding that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*ii*), (g), and (j).

This Court reviews a determination whether statutory grounds exist to terminate parental rights for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014). This Court must defer to the trial court's special opportunity to observe the witnesses. *Id.*

To terminate parental rights, the trial court must find clear and convincing evidence of one or more of the statutory grounds set forth in MCL 712A.19b(3). *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). In this case, the court terminated respondent's parental

---

[1] The parental rights of SAB's biological father, who is not party to this appeal, were terminated on March 22, 2017.

-1-

rights under MCL 712A.19b(3)(c)(*ii*), (g), and (j), which provide that termination is proper when:

> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> \* \* \*

> (g)  The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> \* \* \*

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

I.  GROUNDS FOR TERMINATION UNDER MCL 712A.19b(3)(c)(*ii*)

The trial court found that termination was appropriate under MCL 712A.19b(3)(c)(*ii*) because

> it appears to the Court that there may be other conditions that caused the child to come within the jurisdiction of the Court.  [Those conditions] would be other care necessary for the child's health or morals, or subjecting the child to a substantial risk of harm to the child's mental wellbeing.

The court stated that these conditions were

> the ability to deal with normal day-to-day occurrences in childrearing: Coping with a child when a child's upset and the child is sick; addressing things like changing diapers, feeding . . . .

The trial court stated that respondent was given ample notice of her parenting skills deficiencies and was provided therapy, education, and training to address those deficiencies.

From the very commencement of these proceedings, respondent received recommendations to rectify her problems in providing day-to-day childcare for SAB, and she was given a reasonable opportunity to rectify those conditions.  On many occasions, DHHS spoke with respondent about the way she dealt with the day-to-day functions and frustrations of child rearing.  DHHS scheduled, completed, and, sometimes, ensured that respondent attended

parenting skills classes and behavioral therapy sessions with SAB. At these classes and therapy sessions, appropriate child rearing behavior was discussed, and respondent received advice from DHHS workers and her counselor about how she should care for and speak with SAB. DHHS also provided respondent with homework and assignments in an attempt to educate respondent about how to conduct herself while caring for SAB.

In making its findings under MCL 712A.19b(3)(c)(*ii*), the trial court noted that despite the extensive services provided to respondent, she still showed a fundamental deficiency in her ability to interact with SAB in an age-appropriate manner, could not avoid becoming frustrated with basic childcare, and was unable to handle care for two children at a time. The record shows that respondent did not benefit from services or guidance, and was still frequently unable to accept the normal behavioral issues a two-year-old child may display. Respondent became frustrated when SAB was seeking attention and crying because she was sick in the hospital; she became distraught when SAB could not sit still; she had difficulty reading SAB's cues and giving the child age-appropriate responses; and she became frustrated and overwhelmed while changing SAB's diaper. In April and May 2017, DHHS still had concerns with respondent's ability to interact with SAB in an age-appropriate manner. Despite having many opportunities to rectify these deficiencies, respondent did not rectify the "other conditions" outlined by the court.

Further, the trial court did not clearly err in finding that "other conditions" that brought SAB under its jurisdiction would not have been rectified within a reasonable amount of time given SAB's age. Respondent argues that had the court given her more time to respond to her MS medication, the "other conditions" would have been rectified within a reasonable amount of time. Respondent began receiving treatment for MS in February 2017, and she began taking medication in August 2017 that she stated worked "very, very well." Though it is likely that her medical condition could have affected her interactions with SAB, respondent was being treated for MS for a significant period of time before the termination of her parental rights. During this period, despite having the benefit of medical treatment, including a purportedly effective MS medication, DHHS and agency services, and counseling, respondent still had difficulty interacting with SAB appropriately and dealing with the day-to-day issues of child rearing. Because respondent continued to have inappropriate interactions with SAB that were noted by officials involved in the case as late as September 2017, the trial court did not clearly err in determining that respondent would not rectify the "other conditions" within a reasonable amount of time given SAB's age.

## II. GROUNDS FOR TERMINATION UNDER MCL 712A.19b(3)(g)

The trial court justified its finding under MCL 712A.19b(3)(g) by incorporating its reasoning for terminating respondent's parental rights under MCL 712A.19b(3)(c)(*ii*) and by highlighting respondent's inability to care for SAB in the past, and how respondent would be unable to do so in a reasonable amount of time considering SAB's age.

Respondent argues in part that the court clearly erred in finding grounds for termination under MCL 712A.19b(3)(g) because she was not able to rectify her deficiencies in providing care or custody for SAB when SAB was moved in February 2017 to a foster home that was far away from respondent's home. We disagree. DHHS attempted to coordinate and facilitate services for respondent while respondent was in the hospital in late February. In March 2017,

DHHS conducted supervised visitations with respondent and SAB, and transported respondent to a check-in with SAB, where respondent "appear[ed] to become frustrated and overwhelmed" while she changed SAB's diaper. Between April and May 2017, DHHS conducted more supervised visits with respondent and SAB, and expressed concerns that respondent did not interact with SAB in an appropriate manner. Services were paused in late May because respondent gave birth to her son, ZM. In July 2017, DHHS conducted a supervised visit and reported that respondent snapped at SAB when respondent became frustrated. A court caseworker reported that after respondent obtained full-time employment in August 2017, she canceled visits and failed to keep in touch with the court caseworker, the DHHS caseworker, or her counselor, and that her parenting time was suspended on September 12, 2017.

Rather than being unable to rectify her inability to provide care or custody to SAB due to the distance between her home and the foster home, DHHS continued to provide respondent with opportunities to improve her parenting skills and demonstrate her ability to provide proper care and custody for SAB. After nearly 16 months of services and counseling, respondent became increasingly disengaged, demonstrated the same parenting deficiencies identified by DHHS at the initiation of the proceedings, and eventually lost touch with DHHS and caseworkers.

Respondent also argues that the court clearly erred in finding grounds for termination under MCL 712A.19b(3)(g) because she complied with all DHHS and court expectations. Although the record indicates that respondent cooperated with DHHS and the court, it cannot be said that she complied with all DHHS and court expectations. Throughout the pendency of the proceedings, respondent was subject to the following pertinent orders:

> Respondent will not use, possess, or consume alcohol, controlled substances or any other intoxicants not prescribed to her; continue to seek and maintain employment; attend and demonstrate benefit from parenting education programs; and not engage in any other dating or romantic relationship.

In its findings, the trial court highlighted that although respondent cooperated with DHHS, she did not comply with all of DHHS's and the court's expectations. The court stated that it took issue with respondent's use of alcohol while diagnosed with MS and with her initiation of online relationships, which it noted were contrary to court orders and exhibited unnecessarily risky behavior. The court was concerned that respondent had nearly 10 different jobs in 20 months. It further found that respondent's choice to take a full-time job despite having her housing and food covered by state programs evidenced her inability to prioritize fully committing to the DHHS process to reunite with SAB. The court also noted that despite DHHS's 16-month attempt to render services that would benefit respondent, respondent had not benefitted from parenting programs. The court expressed concern that despite the limited time respondent had with SAB during visitations, she often chose to have SAB watch videos and play with her telephone instead of interacting in a more personal fashion. Viewing these findings in light of respondent's continued parenting and temperamental deficiencies, the length of time she was provided services to rectify these deficiencies, and her noncompliance with DHHS and court expectations, we conclude that the trial court did not clearly err.

## III. STATUTORY GROUNDS UNDER MCL 712A.19b(3)(j)

The trial court incorporated by reference all findings it previously made under MCL 712A.19b(3)(c)(*ii*) and (g) as support for finding that termination was also proper under MCL 712A.19b(3)(j).

When these proceedings were initiated, SAB was being treated in the hospital for abscesses and diaper rash, which were likely caused by being left to sit in her own bodily fluids and excrement for considerable lengths of time. The court noted that even after receiving 16 months of parenting counseling and services, no one who observed respondent interact with SAB would recommend that respondent could handle caring for SAB while unsupervised. Professionals stated that respondent parented well while in a structured environment, but could not if not given support and coaching. These considerations support the conclusion that there is a reasonable likelihood that if SAB were returned to respondent's care, her physical health and mental well-being would be harmed.

Moreover, a court may consider a parent's failure to comply with a case service plan in assessing if harm may come to a child if returned to a parent's care. *In re Mason*, 486 Mich 142, 159 n 9; 782 NW2d 747 (2010). As the trial court noted, respondent did not fully comply with the case service plan and the court's expectations.

Finally, respondent again argues that had the court given her more time to respond to her MS medication, the problems she was working on that would harm SAB would be rectified. As stated above, however, respondent has demonstrated that the effects of her MS medication have minimal bearing on her parenting abilities or her ability to rectify the conditions that led to the trial court's assumption of jurisdiction.

## IV. BEST-INTERESTS DETERMINATION

Finally, the trial court did not clearly err in finding termination of respondent's parental rights to be in SAB's best interests.

An appellate court "review[s] for clear error . . . the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich at 356-357. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." *In re Olive/Metts Minors*, 297 Mich App at 42 (quotation marks and citation omitted). Factors to consider include child-parent bonding, parenting skills, the child's need for permanency, stability, and finality, and also how the child's foster home compares with the parent's home. *Id*. at 41-42. The court may also consider the length of time the child was in care, the likelihood that the child could be returned to the parent's home within the foreseeable future, and compliance with the case service plan. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015). In addition, the court may consider the child's "well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

The trial court found that termination of respondent's parental rights was in SAB's best interests because respondent was unable "to give [SAB] the attention and the nurturing that she

needs"; that respondent could not care for SAB when the toddler was acting in a manner respondent found challenging or less than ideal; that her life was unstable; that she continued to maintain occasional contact with SAB's father, who once physically abused her; and that she did not provide SAB with age-appropriate responses. The court properly cited these facts present in the record and assessed DHHS witnesses and their credibility in making its determination. See *In re Fried*, 266 Mich App 535, 541, 544; 702 NW2d 192 (2005). Moreover, respondent failed to comply with the case service plan, and SAB's caretakers expressed that she was not responding well to a prolonged period in foster care. These facts further underscore the court's best-interest findings. Given respondent's demonstrated lack of fundamental parenting skills and her unaddressed poor temperament in rearing her daughter, the trial court did not clearly err in finding that termination of respondent's parental rights was in SAB's best interests.

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra