# Order

**Michigan Supreme Court**
**Lansing, Michigan**

February 28, 2020

160626-7

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

*In re* CURRY, Minors.

SC: 160626-7
COA: 343669; 350113
Oakland CC Family Division:
2016-847120-NA

_____/

On order of the Court, the application for leave to appeal the November 12, 2019 judgment of the Court of Appeals is considered. Pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we REVERSE the judgment of the Oakland Circuit Court terminating respondent's parental rights, and we REVERSE the judgment of the Court of Appeals affirming the circuit court.

The trial court terminated respondent's parental rights to three minor children, TLC, SLC, and LAC. In 2016, LAC responded affirmatively to a leading question from her aunt indicating respondent had sexually abused her. The aunt reported the allegation to her mother (the children's maternal grandmother) who, in turn, reported the allegation to the children's mother. A referral of allegations of sexual abuse was reported to Child Protective Services (CPS), prompting a CPS worker to visit the home and meet with the mother and LAC. The mother agreed to bring all three children to Care House for a forensic interview and to prevent respondent from contacting the children. Based on an allegation that all three children had been sexually abused, in addition to an allegation that respondent and the children's mother threatened the children with a "whooping" if they discussed the allegation, a petition for temporary custody against both respondent and the children's mother was filed by the Department of Health and Human Services (DHHS). Following a hearing and upon a finding of reasonable cause that one or more of the allegations was true, the circuit court ordered the children to be taken into custody.

DHHS subsequently amended the petition against both parents seeking permanent custody of all three children. Several additional hearings were held and the circuit court eventually ruled that the aunt's statement regarding LAC's statement of abuse and the statement by LAC's sibling regarding respondent threatening a "whooping" were admissible under the "tender years" hearsay exception in MCR 3.972(C)(2). The case proceeded to trial.

Viewed in a light most favorable to the petitioner, the facts established in the circuit court record are as follows. In 2016, LAC's aunt was driving 3-year-old LAC and her 5-year-old cousin. The girls were playing with dolls in the backseat. The aunt later recalled

that after the cousin said she was going to kiss her doll on its forehead, LAC said she was going to kiss her doll on the "kitty," a euphemism used in the family to refer to a vagina. The aunt asked, "[W]ho told her that?" and LAC answered that respondent had. The aunt then asked if respondent kissed LAC's vagina, and she said "yes." LAC would not repeat the statement in a forensic interview. However, in the interview, LAC did respond affirmatively to leading questions such as whether it was raining inside, and whether she was 10 years old. Additionally, though SLC never disclosed any abuse in her forensic interview, she said she would "get her butt whooped" for talking about touches to her butt or vagina. LAC's mother testified that when she told respondent about the statement, he said LAC was "exaggerating." LAC's mother told respondent he needed to talk with LAC and "let her know what good touches and bad touches are basically." Respondent denied any abuse to LAC's mother. Regarding the statement, LAC's mother testified, "I don't know who she did or didn't learn it from which is why I took her to the doctor to see what was going on." LAC's mother talked to LAC about the statement and "didn't know what to believe because she went back and forth."[1]

In an order entered on November 14, 2017, following trial, the circuit court held that jurisdiction under MCL 712A.2(b)(1) and (2) had been established by a preponderance of the evidence as to respondent but that jurisdiction had not been established with respect to the children's mother. The circuit court also held that statutory grounds for termination of respondent's parental rights under MCL 712A.19b(3)(b)(i), (g) and (j) had been proven by clear and convincing evidence. In an order entered on April 12, 2018, the circuit court held that termination of respondent's parental rights was in the best interests of the children. Respondent appealed, and the Court of Appeals affirmed. We vacated the Court of Appeals judgment in part, and remanded the case to the circuit court to reconsider its order terminating respondent's parental rights and to apply the clear and convincing evidentiary standard to the allegations of sexual abuse. *In re Curry, Minors*, 503 Mich 1023 (2019). On remand, the circuit court held an evidentiary hearing at which one witness testified, and the court again terminated respondent's parental rights. The Court of Appeals affirmed once again. *In re Curry, Minors (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued November 12, 2019 (Docket Nos. 343669 and 350113).

The Court of Appeals correctly stated the applicable evidentiary standard and standard of review regarding termination:

> Under MCL 712A.19b(3), petitioner has the burden of proving a statutory ground for termination by clear and convincing evidence. See

---

[1] At the removal hearing, the CPS worker testified that all three children disclosed sexual abuse during the Care House interview. However, review of the interviews at the subsequent hearings evidenced that this allegation was not substantiated.

MCR 3.977(A)(3) and 3.977(H)(3); *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000).

"[T]he clear and convincing evidence standard [is] the most demanding standard applied in civil cases[.]" *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (brackets added). Evidence is clear and convincing when it

> "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." . . . Evidence may be uncontroverted, and yet not be "clear and convincing." . . . Conversely, evidence may be "clear and convincing" despite the fact that it has been contradicted. [*Id*., citing *In re Jobes*, 108 NJ 394, 407-408; 529 A2d 434 (1987).]

> An appellate court "review[s] for clear error . . . the court's decision that a ground for termination has been proven by clear and convincing evidence." *In re Trejo*, 462 Mich at 356-357. "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014). This Court must defer to the trial court's special opportunity to observe the witnesses. *Id.* [*In re Curry, Minors*, unpub op at 3.]

This record leaves us with a definite and firm conviction that a mistake has been made.

Respondent does not challenge the circuit court's initial authorization to take the children into custody, and we see no factual basis to question the circuit court's determination that reasonable cause existed to believe that one or more of the allegations of abuse were true. We disagree, however, with the circuit court's determination that a statutory basis to terminate respondent's parental rights was established by clear and convincing evidence. The statutory grounds for termination and the best-interest determination all turn on the factual finding regarding whether respondent sexually abused one of the children. That finding is based on a 3-year-old child's response to two open-ended questions and one leading question asked by her aunt, and a 6-year-old child's statement that respondent threatened a "whooping" for discussing the allegations.

Regarding the initial statement, we note that the child did not repeat the statement in the forensic interview. But the child affirmatively responded to leading questions such

as whether it was raining indoors and whether she was 10 years old. Appellate courts give deference to a trial court's opportunity to observe a witness, but the trial court did not actually observe the statement characterized by the aunt as alleging abuse.[2] Further, the trial court seemed to place the burden on respondent to disprove the statement. Finding respondent's various theories on why a 3-year-old might make such a statement unsatisfactory, the trial court concluded it had to take the statement at "face value." In doing so, the court shifted the burden to respondent to disprove the statement.

Regarding the indication that respondent threatened another child with a "whooping" for discussing the allegations, these are hearsay accounts from a 6-year-old. The record does not seem clear to us that whatever was said was an attempt at thwarting an investigation rather than an inartfully phrased instruction about what topics of discussion are generally appropriate.

Even assigning these two pieces of evidence the most weight they might be due, we cannot see how any reasonable trier of fact could consider this evidence "so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Martin*, 450 Mich at 227 (citations and quotation marks omitted). Consequently, we conclude the trial court abused its discretion. We REMAND this case to the Oakland Circuit Court, Family Division to determine whether a basis exists for the court's continuing jurisdiction and for further proceedings not inconsistent with this order.

We do not retain jurisdiction.

MARKMAN, J., (*dissenting*).

The majority provides a fair-minded recitation of the record upon which the trial court assumed jurisdiction and terminated respondent-father's parental rights, and its decision to reverse both the trial court and the Court of Appeals is not unreasonable. Nonetheless, I respectfully dissent.

Before considering whether termination of parental rights is in the best interest of a child, the trial court must find that clear and convincing evidence supports at least one statutory ground for termination. *In re Trejo*, 462 Mich 341, 355 (2000). Here, the trial court found that the evidence supported its conclusions that respondent-father had sexually abused LAC and that there was a reasonable likelihood the children would suffer additional injury or abuse if placed in his home. See MCL 712A.19b(3)(b)(i). And an appellate court reviews for clear error the trial court's determination that a statutory ground for termination

---

[2] In addition, the aunt testified at trial that she did not like respondent, ranking her dislike for him a "10" on a scale of 1 to 10.

has been shown. *In re Trejo*, 462 Mich at 356-357. "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Dearmon*, 303 Mich App 684, 700 (2014). In reviewing the record, an appellate court must "giv[e] due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297 (2004). Finally, for this Court to intervene, respondent-father was obligated to demonstrate that the Court of Appeals' decision to affirm the trial court "is clearly erroneous and will cause material injustice[.]" MCR 7.305(B)(5)(a).

This admittedly is a difficult case. However, in light of the following, I am unable to concur with the majority that the trial court "clearly erred" when it found that "clear and convincing" evidence supported its conclusion that respondent-father sexually abused LAC. First, it is highly atypical, and indicative of sexual abuse, for a three-year-old to spontaneously suggest an act of oral sex. Second, in response to her aunt's nonleading and open-ended question as to who gave her the idea to kiss her doll goodnight on the "kitty," LAC answered "My Daddy." Third, respondent-father initially responded to the allegation that he had sexually abused his daughter by professing that LAC was "exaggerating," a somewhat odd response that could reasonably be viewed as an attempt by respondent-father to *minimize* the extent of his inappropriate conduct rather than to affirmatively *deny* the allegation. Fourth, while LAC did not restate the allegation in a forensic interview, a reasonable observer might ascribe this to intervening actions by LAC's parents subsequent to the initial allegation to threaten one of LAC's siblings with a "whooping" if the allegations were discussed any further. Fifth, LAC's mother's testified that, when she first discussed the allegation with LAC, the child "went back and forth" concerning the allegation, indicating that although LAC did not restate the allegation at the forensic interview, in much closer proximity to the initial comments to her aunt, the child *did* restate the allegation to her mother. Finally, I am unpersuaded by the majority's effort to minimize the trial court's conclusion that LAC's aunt testified credibly. While the majority correctly points out that the aunt disliked respondent-father before the critical interaction with her niece, a close reading of the hearing transcript suggests nothing incompatible with the trial court's conclusion that the aunt testified forthrightly, providing what information she possessed, presenting a straightforward and unembellished version of events, and acknowledging when she lacked adequate information.

Having considered the deference owed the trial court's credibility determination, the available evidence, and the inferences that could reasonably have been drawn from such evidence by the trial court, I am *not* left with a "definite and firm" conviction that the court erred in terminating respondent-father's parental rights. Nor am I convinced that respondent-father has shown that the Court of Appeals reached a "clearly erroneous" decision in affirming the trial court. Thus, while I appreciate the basis for the majority's

position, I do not believe the trial court's (or the Court of Appeals') positions to be unreasonable.  Therefore, I respectfully dissent.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

February 28, 2020



Clerk

p0225