*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BATES, Minors.

UNPUBLISHED
December 21, 2023

No. 361566
Grand Traverse Circuit Court
Family Division
LC No. 18-004645-NA

## ON REMAND

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

This case returns to us on remand from the Michigan Supreme Court to consider "whether the Grand Traverse Circuit Court clearly erred by concluding that termination of the respondent's parental rights was in the children's best interests."[1] *In re Bates*, ___ Mich ___; 996 NW2d 130 (2023). Because we conclude the trial court did not clearly err when it terminated respondent's parental rights, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In this Court's previous 2-1 majority decision, the relevant facts and procedural history were set forth as follows:

> In December 2019, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court take jurisdiction over the children,

---

[1] Although the Michigan Supreme Court remanded the case to us to consider whether termination was in the children's best interest, the Supreme Court did not disturb our opinion affirming the trial court's statutory grounds for termination, which remains law of the case. See *Augustine v Allstate Ins Co*, 292 Mich App 408, 425; 807 NW2d 77 (2011) (stating that under the law-of-the-case doctrine, "this Court's determination of an issue in a case binds both the trial court on remand and this Court in subsequent appeals.").

remove them from respondent's care, place them with their father, and terminate respondent's parental rights. An amended petition was filed in January 2020.

The petition was filed as a result of respondent's substance abuse and mental health issues, prior Child Protective Services cases involving her abuse of alcohol, and her inability to care for her children's health care needs. Approximately one year before the petition, AAB was diagnosed with type 1 diabetes. The petition alleged that respondent could not care for AAB because while AAB was in her care, she failed to give him insulin and monitor his blood sugar levels for several days while he was observably sick. As a result, AAB went into diabetic ketoacidosis and was in critical condition at the hospital and in a coma for several days. In November 2020, respondent pleaded guilty to one count of third-degree child abuse because of her failure to provide AAB with proper medical assistance. Respondent was sentenced to five months in jail and 18 months' probation and was incarcerated from January 2021 until April 2021. When she was released, respondent violated her probation in July 2021 for consuming alcohol and was incarcerated again from July 2021 until October 2021. Respondent also was arrested twice for shoplifting in July 2021 and was intoxicated during these two incidents. The trial court held a termination hearing in March and April 2022, and concluded there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm if returned to parent), and that termination was in the children's best interests. [*In re Bates*, unpublished per curiam opinion of the Court of Appeals, issued March 23, 2023 (Docket No. 361566), pp 1-2 (footnote omitted).]

On appeal, the majority affirmed the trial court's determination that statutory grounds for termination had been demonstrated by clear and convincing evidence. In relevant part, the Court stated:

The trial court concluded that statutory grounds for termination were met under MCL 712A.19b(3)(j) because of respondent's failure to care for AAB's diabetes, failure to educate herself about AAB's diabetes until after she was diagnosed with type 1 diabetes herself, diminution of her role in AAB's diabetic ketoacidosis and hospitalization, deflecting of blame to others, and continued substance abuse and mental health issues. The court noted that "[g]iven Respondent Mother's continued propensity to diminish her role in [AAB]'s [diabetic ketoacidosis] and deflect blame along with her continued struggle with substance abuse throughout this case, there is clear and convincing evidence that there is a reasonable likelihood that the children will be harmed if they are returned to the home of Respondent Mother."

The record before us demonstrates that the trial court did not clearly err when it concluded there was a reasonably likelihood the children would be harmed if returned to respondent's care. Respondent struggled with mental health and substance abuse issues which had a negative effect on the children, culminating with AAB being hospitalized and near death as a result of respondent's neglect.

Respondent admitted that she did not educate herself about diabetes until she was diagnosed with the disease, which occurred after AAB's diagnosis. During the pendency of this case, respondent was unable to maintain sobriety and was arrested twice for shoplifting while intoxicated. Respondent's struggles with substance abuse created a life-threatening emergency to AAB, and respondent was unable to demonstrate to DHHS that she was prepared to safely care for her children going forward. Indeed, the children themselves stated they did not feel safe in respondent's care and wanted to have another adult check on them when with respondent. Accordingly, the trial court did not clearly err when it concluded that there was clear and convincing evidence that there was a reasonable likelihood the children would be harmed if returned to respondent's care. See *In re LaFrance Minors*, 306 Mich App 713, 728; 858 NW2d 143 (2014) (trial court did not clearly err when it terminated respondent-father's parental rights where the evidence showed the respondent medically neglected his child, had substance abuse issues that would continue to pose a risk to the child, and failed to participate in services to care for child with medical needs). [*In re Bates Minors*, unpub op at 2-3 (footnote omitted).]

Judge Gleicher dissented, focusing on whether "it is in the children's best interests to terminate their relationship with their mother." *Id*. (GLEICHER, C.J., dissenting) at 5. Noting that "the children here have permanence and stability with their father," and that there was "no evidence whatsoever that the children's supervised visits with their mother harmed them," Judge Gleicher concluded:

[I]n its 42-page opinion exquisitely detailing mother's past failures and misdeeds, the trial court labored to ignore her successes and the powerful evidence of her present fitness. In my view, the termination of mother's parental rights based on her past conduct was mostly punitive rather than advancing anyone's best interests. I fear that the destruction of the children's relationship with their mother will punish them, as well. These children are not abused or neglected. They are not at risk of being abused or neglected. The permanent termination of their relationship with their mother punishes them as well as mother and conflicts with their short-term and long-term best interests. [*Id*. at 6.]

Respondent subsequently applied for leave with the Michigan Supreme Court, seeking review of this Court's determination that statutory grounds for termination were proper and, raising for the first time on appeal, the question of whether the trial court clearly erred when it concluded that termination was in the children's best interests. In lieu of granting respondent's application, the Supreme Court remanded the case to us "for consideration whether the Grand Traverse Circuit Court clearly erred by concluding that termination of the respondent's parental rights was in the children's best interests." *In re Bates*, ___ Mich ___; 996 NW2d 130 (2023).

## II. APPLICABLE LAW

This Court reviews a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A trial court's findings are clearly erroneous if the reviewing court is "definitely and firmly convinced that it made a mistake." *In re Keillor*, 325

Mich App 80, 85; 923 NW2d 617 (2018). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court must defer to the trial court's special opportunity to observe the witnesses. *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014).

"That custody with natural parents serves a child's best interests remains a presumption of the strongest order and it must be seriously considered and heavily weighted in favor of the parent." *In re LaFrance Minors*, 306 Mich App 713, 724; 858 NW2d 143 (2014) (quotation marks and citations omitted). Although termination of parental rights requires proof of at least one of the statutory termination factors on clear and convincing evidence, "the preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich at 83.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-being while in care . . . ." *In re White*, 303 Mich App at 714. Each factor should be considered by the trial court separately for each child, but individual findings are not required if the children's interests are similar. *Id*. at 715-716. Importantly, when the court conducts a best-interests analysis, the appropriate focus "has always been on the child, not the parent." *In re Moss*, 301 Mich at 87.

### III. BEST INTERESTS

Respondent argues that the trial court clearly erred when it found by a preponderance of the evidence that termination was in the children's best interest. Specifically, respondent contends that the trial court clearly erred because it failed to consider whether termination was the least restrictive means possible to protect the safety and wellbeing of the children. We disagree and affirm the trial court's order.

In this case, the trial court explained its best-interest determination, stating:

> [The children's] need for permanence, stability and finality, and the length of time both children may be required to wait for Respondent Mother to rectify her substance abuse and mental health issues weighs in favor of termination of Respondent Mother's parental rights as to [the children].

> Respondent Mother's mental health and substance abuse issues have been affecting her ability to care for her children, since [AMB] was born in 2015 and continue to persist despite [AAB] nearly losing his life and her children being removed from her care since January 2020.

-4-

Although [the children] have been removed for over two years, Respondent Mother is only recently showing ANY benefit with regards to her substance abuse. However, her substance abuse and mental health issues continue to persist. By her own admission, she recently relapsed in February 2022. She failed to report this relapse to her caseworker or her recovery coach.

Respondent Mother's 2018 psychological evaluation indicated that "[s]he has a marked tendency to overvalue her personal worth and become preoccupied with her own needs at the expense of concern about others. She has a tendency to externalize blame and responsibility and entitlement to what she wants." Her testimony at trial, as well as her statements made in text messages to Non-Respondent Father, evidences that she continues to externalize blame.

Given the length of time [the children] have been removed—over two years in the present case—and [respondent's] continued struggles with substance abuse and mental health, termination is in [the children's] best interest.

It is clear that Respondent Mother loves her children. With regards to the bond between [the children] and Respondent Mother, the children appear to enjoy spending time with Respondent Mother; however, they both express concerns about being alone with Respondent Mother.

Since Respondent Mother completed her inpatient treatment, supervised visits have been going well. [The children] do appear to enjoy spending time with their mother at visits, which have been occurring in a restaurant or indoor play type of facility.

However, due to the short length of time that Respondent Mother has been out of inpatient therapy, the number of positive visits the children have had with Respondent Mother is very limited, and these visits are in a supervised setting.

Amie Ollis, [AAB]'s trauma therapist, regularly asks about [AAB]'s time with his mother, and he does not give negative or positive responses; rather he is very neutral. Notably, [AAB] expressed that if he was to go back to his mom or spend more time with his mom, he was concerned that he would have to take care of his little brother.

Ms. Ollis has never observed parenting time or met Respondent Mother; however, she testified that she believed that stopping the visits with Respondent Mother would not negatively affect [AAB]. She indicated that she believes [AAB] would miss his mother; however, she does not believe that the relationship is providing sustenance to his development. She testified that she believes that given their removal in January 2020 and the inconsistent visits owing to Respondent Mother's incarcerations and unavailability, [AAB] has already experienced the loss of his mother.

Ms. Couture, [AMB]'s therapist testified that [AMB] knows that he needs to be in a safe environment and has indicated that he wants to visit with his mother, but he wants an adult to come every day to check on him to make sure that he is okay.

[The children] are doing extremely well in the care of their father. Amie Ollis, [AAB]'s trauma therapist, testified [AAB] was presenting with minimal stressors and seems to be thriving at school and home. Non-Respondent Father is very attentive to [AAB]'s medical needs. He testified that he sets an alarm at 2:30 a.m. every morning to check on [AAB].

Likewise, [AMB]'s therapist, Deanna Couture, testified that [AMB] is a smart little guy and is doing well.

Although [the children] are placed with their father, this Court finds that termination of Respondent Mother's parental rights is still in [the children]'s best interests. Respondent Mother previously has had multiple opportunities to prove that she can safely parent [the children], but has failed to do so. The abuse and neglect case which was initiated in 2018 was closed when the parents negotiated a custody order under which Respondent Mother was to have supervised visits and then transition to unsupervised time. Less than nine months after that stipulation was executed, [AAB] nearly lost his life while in the care of Respondent Mother. Respondent Mother's mental health and substance abuse issues have been affecting her ability to care for her children since [AAB] was born and continue to persist despite [AAB] nearly losing his life and her children being removed from her care since January 2020.

The trial court did not clearly err when it found termination to be in the best interests of the children. Respondent contends that in order to withstand constitutional scrutiny, courts cannot "evaluate the benefits of termination in isolation," and "must consider termination only after concluding these alternatives would less adequately serve the child's needs." According to respondent, the trial court failed to do so because "the children were living safely with their father and had a strong relationship with their mother." Contrary to respondent's arguments, the trial court did consider these factors when terminating respondent's parental rights, and took the appropriate steps to attempt reunification of the children with respondent. When the first petition was filed in 2018, it was eventually withdrawn after respondent and the children's father entered into a custody order that attempted to address the concerns raised in the petition. Only a few months later, AAB went into diabetic ketoacidosis due to respondent's neglect. And despite what should have been a wakeup call, respondent continued to deny responsibility and failed to comply with her service plan over the course of three years. We therefore reject the assertion that the trial court failed to properly consider the "least restrictive means" when concluding that the children's best interests would be served by terminating respondent's parental rights. DHHS made a good faith effort to achieve reunification by providing respondent access to services and giving her ample opportunities to demonstrate compliance.

Respondent suggests that the "least restrictive means" were not considered because the children were living with their father and the issues with the children could have been settled

through a custody order. As previously noted, the trial court tried this approach and it did not succeed after respondent failed to seek medical care for AAB's diabetes. Moreover, contrary to respondent's assertions, the trial court did consider this factor, including that it weighed *against* termination, stating: "A child's placement with relatives weighs against termination of parental rights under MCL 712A 19a(6)(a), and the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in a child's best interest." Thus, in the trial court's view, respondent's demonstrated inability to consistently maintain sobriety or care for her children compelled termination, even though the children were living with their father.

Respondent also argues that the least restrictive means were not considered because she demonstrated "tremendous strides in addressing her struggles with substance abuse." Although we laud respondent's optimism with overcoming her "struggles with substance abuse," the record amply supports the trial court's conclusion that respondent's failure to make progress in or complete the services offered by DHHS concerning her substance abuse weighed in favor of termination. See *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022) (stating that termination was proper "given respondent-mother's consistent lack of progress toward reunification—including her ongoing and unrectified substance-abuse issues . . . ."). Moreover, the appropriate focus at this stage is not necessarily on the success of respondent's recovery, but on whether the children will have their bests interests served by remaining with respondent while she undergoes recovery. See *In re Moss*, 301 Mich at 87. Although at the time of the hearing the court noted that respondent had made *some* progress toward overcoming her substance abuse issues, the court also found that respondent's issues continued to "persist," including a relapse in January and February 2022 that respondent failed to acknowledge was an issue.

On appeal, respondent does not meaningfully challenge the trial court's findings concerning her lack of progress, but rather offers contrary examples of compliance as well as aspirations that her outlook continues to improve. To the extent that respondent argues the trial court failed to appropriately weigh the evidence or give certain witnesses more credibility over others, we defer to the trial court. *In re Dearmon*, 303 Mich App at 700. But perhaps most importantly, while respondent uses many pages of her brief in an attempt to demonstrate how *she* has changed and is capable of being a good parent, the focus of a best-interests analysis is not on the parent but the children.[2] *Id.* And while it is encouraging that respondent is taking steps to overcome her issues, the record before the trial court showed consistent lack of progress and failure to take responsibility for her actions. It must be mentioned that respondent's interaction with DHHS began in 2018 when the children were found in respondent's care when she was found unresponsive with a blood alcohol level of ".370." Despite putting a safety plan in place and receiving mental health services, respondent's condition did not improve, and she was allegedly found months later living with "fecal matter from the cats on the beds and floor," "urine pooled up on the hardwood floor and stains on the carpets," the washer and dryer were packed with clothes,

---

[2] In our view, many of the arguments that respondent advances in her brief are more appropriate in the context of whether there were statutory grounds to terminate her rights, not on whether it is in the best interests of the children. To the extent respondent wants to relitigate those issues, they have already been resolved.

there was "feces on the clothing," one of the bathrooms was clogged with "feces on the toilet seat and in the toilet bowl," there was "standing water in the basement," and the home smelled "strongly of urine and feces."

Despite intensive intervention and services, respondent failed to demonstrate she could provide a safe home for the children. After being jailed for probation violations and retail fraud in late 2021—almost three years after the petition in this case was filed—respondent relapsed again in January and February 2022. Respondent refused to acknowledge the relapses, stating she only had some "sips" of alcohol which were a "mistake," even though it was demonstrated that on at least one occasion the alcohol was purchased while respondent was shopping with the children. Given these facts, it was not clearly erroneous for the trial court to conclude that it was in the children's best interests to terminate respondent's parental rights.

The record also supports the trial court's finding that the children's safety would be in danger if they were returned to respondent's care. See *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011) (concluding that the trial court did not clearly err by finding termination proper because "[c]ompelling evidence indicated that the children would not be safe in respondents' custody considering that both children suffered unexplained injuries with serious abuse while in respondents' primary care."). This Court already affirmed the trial court's conclusion that termination was proper under MCL 712A.19b(3)(j) because of a "reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent":

> Respondent struggled with mental health and substance abuse issues which had a negative effect on the children, culminating with AAB being hospitalized and near death as a result of respondent's neglect. Respondent admitted that she did not educate herself about diabetes until she was diagnosed with the disease, which occurred after AAB's diagnosis. During the pendency of this case, respondent was unable to maintain sobriety and was arrested twice for shoplifting while intoxicated. Respondent's struggles with substance abuse created a life-threatening emergency to AAB, and respondent was unable to demonstrate to DHHS that she was prepared to safely care for her children going forward. Indeed, the children themselves stated they did not feel safe in respondent's care and wanted to have another adult check on them when with respondent. [*In re Bates*, unpub op at 3.]

We therefore conclude again—now under the framework of best interests—that the trial court did not clearly err when it concluded that it would not be in the children's best interest to be returned to respondent and that further efforts toward reunification not be made. See MCL 712A.19b(5). Respondent initially failed to properly learn to care for AAB's diabetic condition, which almost resulted in his death, and never fully took responsibility for her failures before the trial court, instead shifting blame to others. And although respondent was able to later demonstrate competence with treating AAB's diabetic condition, she did not demonstrate to the trial court that she could remain sober around, and therefore care for, the children on a consistent and reliable basis. The children themselves stated that they wanted other adults to be available for them during their visits with respondent in case something happened. Considering the needs of the children, the trial court did not err by removing the instability and insecurity that respondent presented in their lives.

The trial court did not clearly err when it terminated respondent's parental rights on the basis of what was in the best interests of the children. Although the trial court did not frame the issue as one of "least restrictive means" (it could not have given respondent's failure to raise the issue in that court), the trial court did consider the issues raised by respondent here—i.e., the placement of the children with the father and respondent's record of compliance and sobriety—and concluded that in each instance termination was warranted.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Anica Letica