*In re* DEARMON

Docket Nos. 314459 and 316653. Submitted December 11, 2013, at Grand Rapids. Decided January 14, 2014, at 9:10 a.m.

The Department of Human Services (DHS) petitioned the Kent Circuit Court, Family Division, in August 2012, requesting that the court take jurisdiction over E. Harverson's two children and terminate her parental rights after a report of domestic violence between Harverson and her boyfriend. The court, Kathleen A. Feeney, J., authorized the petition, and it was properly served on Harverson. The DHS subsequently filed an amended petition in October 2012, which was never authorized by the court or served on Harverson. The DHS filed a second amended petition that corrected some date errors and contained allegations of the boyfriend's domestic-violence conviction and allegations of domestic violence involving the children's father. The court authorized that petition in December 2012, but it was never served on Harverson. Before empaneling the jury at the adjudication, the court read the allegations in the December petition to the venire. Later in the trial, the court denied Harverson's motion for a mistrial on that ground and read the allegations from the August petition to the jury. The jury found that the DHS had established grounds for jurisdiction over the children, and Harverson appealed. Following the termination hearing, the court terminated Harverson's parental rights under MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (j) (reasonable likelihood of harm if child returned to parent), concluding under MCL 712A.19b(5) that termination was in the children's best interests. Harverson appealed, and the Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. Because respondent was properly served with the initial petition and an accompanying summons, the circuit court had personal jurisdiction over her. In child protective proceedings, service of a summons and a petition places a parent on notice of the petitioner's intention to remove a child from the home or terminate the parent's right to a child's care and custody. MCL 712A.12 requires that the parent named in a termination petition receive personal service of a summons before the court may

conduct a hearing. In the absence of personal service or a waiver of personal service, jurisdiction is not established and the court's orders are void. Moreover, the fact that the respondent had actual notice does not cure the jurisdictional defect. Harverson was personally served with a summons and the original petition, which sought circuit court jurisdiction over the children. The petition clearly communicated the nature of the DHS's allegations and described in detail the conduct underlying its request for jurisdiction. The original petition also sought termination of respondent's parental rights. Service of these documents afforded Harverson notice of the nature of the proceedings and conferred personal jurisdiction over her on the circuit court. Once personal jurisdiction was established, it did not evaporate merely upon the filing of the amended petitions. The DHS's preparation and filing of the amended petitions did not invalidate the personal jurisdiction that had already been obtained.

2. The circuit court's reading from the December petition did not violate due process. The December petition contained several new averments, but with the exception of boyfriend's conviction, the allegations in the December petition referred to the same facts and circumstances as those set forth in the original petition. The initial petition placed respondent on notice of the evidence that would be presented at the trial. Accordingly, the circuit court's reading of the December petition was harmless error, and the court did not abuse its discretion by denying Harverson's motion for a mistrial.

3. Harverson also argued that her due process rights were violated by the introduction of jailhouse telephone conversation audiotapes obtained after the DHS filed the August petition. The tapes reflected respondent's desire to maintain a close relationship with her boyfriend and were admitted after the court ruled that Harverson's counsel had opened the door by asserting through his questioning that Harverson had separated from her boyfriend and had no voluntary contact with him after the first of the three assaults against Harverson in the summer of 2012. Harverson argued that the evidence should have been excluded because it arose after the filing of the original petition. Neither the juvenile code, MCL 712A.1 *et seq.*, nor the court rules mandate the exclusion of evidence concerning events that occur after a jurisdictional petition has been filed. Rather, the rules of evidence apply in adjudications. MCR 3.972(C)(1) provides that the rules of evidence for a civil proceeding and the standard of proof by a preponderance of evidence apply at the trial even if the petition contains a request to terminate parental rights. Evidence that is

relevant should be admitted. Under MRE 401, relevant evidence is evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. If evidence of postpetition facts qualifies as relevant to an issue presented in an adjudication and is otherwise admissible under the rules of evidence, it may be admitted. Evidence bearing on a witness's credibility is always relevant. The August petition included allegations related to domestic violence and the fact that Harverson and her boyfriend were not to have contact with each other. The DHS asserted that Harverson was unable to extricate herself from her boyfriend and that their inherently violent, abusive relationship endangered the children. Harverson insisted that she had done everything in her power to distance herself from the boyfriend. Her credibility was at issue, and the jailhouse tapes bore directly on that credibility, regardless of when she uttered them. Because Harverson had notice of the existence of the tapes, there was no due process violation.

4. The circuit court did not clearly err by terminating Harverson's parental rights. The court found that Harverson had unsuccessfully participated in several domestic violence classes and refused to extricate herself from her relationship with her abusive boyfriend. Harverson had a long history of engaging in domestic violence and repeatedly selected violent, abusive partners. Her halfhearted efforts to escape the cycle of violence that she helped to create resulted in danger to her children.

Affirmed.

1. CHILD PROTECTIVE PROCEEDINGS — TERMINATION OF PARENTAL RIGHTS — PERSONAL JURISDICTION — AMENDED PETITIONS.

Service of a summons and a petition are necessary in a child protective proceeding to place a parent on notice of the petitioner's intention to remove a child from the home or terminate the parent's rights to a child's care and custody; the parent named in a termination petition must receive personal service of a summons before the family court may conduct a hearing, and in the absence of personal service or a waiver of personal service, jurisdiction is not established and the court's orders are void; the fact that the respondent had actual notice does not cure the jurisdictional defect; once personal jurisdiction has been established, however, the petitioner's preparing and filing amended petitions does not invalidate the personal jurisdiction that had already been obtained even if the amended petitions are not served on the respondent (MCL 712A.12).

2. EVIDENCE — CHILD PROTECTIVE PROCEEDINGS — POSTPETITION EVENTS.

Evidence concerning events that occurred after the filing of a petition for jurisdiction in a child protective proceeding may be admitted if it is relevant to an issue presented in the trial and otherwise admissible under the rules of evidence even if the petition contains a request to terminate parental rights; evidence bearing on a witness's credibility is always relevant (MCL 712A.1 *et seq.*; MCR 3.972(C)(1); MRE 401).

*William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *T. Lynn Hopkins,* Assistant Prosecuting Attorney, for the Department of Human Services.

*Mark T. Van Slooten* for E. Harverson.

Before: WHITBECK, P.J., and HOEKSTRA and GLEICHER, JJ.

PER CURIAM. These consolidated appeals present procedural due process issues that arose during an adjudication trial and respondent-mother's challenge to the circuit court's subsequent termination decision. One due process issue relates to personal jurisdiction. Respondent argues that the circuit court's failure to serve her with two amended petitions seeking immediate termination of her parental rights divested the court of power to conduct the proceedings. We conclude that personal jurisdiction attached with proper service of the original summons and petition seeking immediate termination and need not have been reestablished during the proceedings.

The more difficult due process question is whether evidence obtained after a petition has been filed and served may be presented at an adjudication. We hold that evidence relevant to prove or defend a statutory ground for termination is potentially admissible at an adjudication despite that the evidence involves postpe-

tition facts. The evidence must conform to the rules of evidence, and the parties must have notice of the evidence. Here, the evidence presented satisfied those conditions. Because we further find that the circuit court's termination decision was not clearly erroneous, we affirm.[1]

## I. BACKGROUND

On July 17, 2012, Children's Protective Services (CPS) investigator Courtni Adamec received a report that respondent and her boyfriend, Desmond Long, had engaged in domestic violence two days earlier in the presence of Long's four-year-old daughter, ML. Adamec's initial investigation revealed that respondent had a "significant CPS history involving a prior termination of parental rights." Adamec called respondent and requested an opportunity to verify the well-being of respondent's young children, JD and AHD. Respondent said that she would call back and hung up the phone. During their second conversation respondent informed Adamec that she would "ship her children off" if CPS and the courts "get involved." Adamec visited the children the next day. She observed that the children appeared healthy and well fed, but respondent had two black eyes and a swollen face. Respondent initially refused to answer Adamec's questions. Later, respondent claimed that she had obtained a personal protection order (PPO) against Long, planned to press charges for the assault, and had changed the locks on her doors. Respondent adamantly denied that her children had been present during Long's assault.

[1] The circuit court also terminated the parental rights of the minor children's biological father. He has not appealed that order.

Adamec found no record of a PPO. Instead she discovered that Long had been arrested a month earlier for assaulting respondent and that a condition of his bond required that he refrain from contact with her. Next, Adamec conducted a forensic interview of ML. ML recounted that Long and respondent had fought in respondent's apartment and that both combatants had wielded knives. During the altercation, ML and respondent's children attempted to hide behind a mattress. ML recalled that respondent had been bleeding.[2]

Adamec then spoke with the property manager of respondent's apartment complex, who expressed belief that respondent and Long lived together throughout the summer. Adamec concluded that the children had been present during the July 15 brawl and that respondent and Long had continued to cohabitate despite the no-contact bond condition from June 2012. On August 7, 2012, Adamec signed a petition requesting that the circuit court take jurisdiction of the children involved and terminate respondent's parental rights.[3] The court authorized the petition, and the parties agree that it was properly served on respondent.

The petition's factual allegations set forth the dates of the previous terminations of respondent's parental rights and described the information that came to light during Adamec's investigation. On October 12, 2012, petitioner filed an amended petition substantially similar to the original. The October amended petition was never authorized by the court or served on respondent. Petitioner prepared a second amended petition that was

---

[2] Respondent's children were too young to undergo forensic interviews.

[3] Because the circuit court had previously terminated respondent's parental rights to other children, petitioner was required to seek termination of her parental rights in the initial petition. See MCL 722.638(1)(b)(*i*) and (2).

authorized on December 12, 2012, but again was never served on respondent.[4] The December petition corrected date errors in the first petition and added that (1) Long had been convicted of domestic violence arising from the July 15, 2012 assault and (2) domestic violence had marred respondent's relationship with the father of her children. Otherwise, the third petition's factual allegations echoed those of the first. All three petitions stated the same statutory grounds for jurisdiction.

Respondent exercised her right to an adjudication trial, which commenced on January 7, 2013. Before empaneling the jury, the circuit court read aloud to the venire the factual allegations within the December 12, 2012 amended petition. At the time, none of the parties realized that the December petition had not been served on respondent.

In her opening statement, the prosecutor asserted that "[t]his case is very simply about [respondent's] on-going domestic violence and assaultive history and how it places [the children] at a substantial risk of harm in her care and makes their home environment unfit." Respondent's counsel told the jury that respondent was "a victim" of domestic violence who "was doing everything pro-actively to prevent this from happening again. She wanted to prosecute the man who did this." Respondent further contended that the children were not present during the July 15, 2012 altercation.

Adamec described her investigation to the jury and explained her decision to file a petition seeking jurisdiction. The testimony of several other witnesses sup-

---

[4] We highlight that the amended petitions were not "supplemental petitions." A supplemental petition contains additional allegations of abuse or neglect concerning a child who is under the court's jurisdiction. MCL 712A.19(1). Jurisdiction had not been established in this case when the amended petitions were filed.

ported that ML and respondent's children had been present during the July 15 assault. Law enforcement personnel testified about two other episodes of domestic violence between respondent and Long predating the July 15 fight. A sheriff's deputy opined that respondent had initiated the first assault by striking the first blow. The second assault led to Long's prosecution for domestic violence despite respondent's refusal to cooperate. By brawling with respondent on July 15, Long violated a bond condition imposed when he was charged with the second of the three assaults.

On the third day of the adjudicative trial, petitioner sought to introduce audiotaped conversations obtained in September 2012, while Long was lodged in the Kent County Correctional Facility. Over respondent's vigorous objection, the circuit court permitted the jury to listen to the tapes. Although the tapes were not transcribed for this Court's review, subsequent transcript references suggest that the calls reflected respondent's desire to maintain a close relationship with Long.[5] The court ruled that respondent's counsel had opened the door to the introduction of the tapes by asserting through his questioning that respondent had separated from Long and had no voluntary contact with him after the first of the three assaults in the summer of 2012.

When the fourth day of trial commenced, the court notified the parties that it had erroneously read aloud from the December 2012 amended petition rather than the original August petition. After entertaining lengthy argument, the court denied respondent's motion for a mistrial. During the court's final instructions to the

---

[5] In the future, we urge trial courts to order recordings such as the jailhouse audiotapes transcribed when they are played for the jury. Alternatively, the parties may prepare and stipulate to a transcript of recordings. See MCR 7.210(A)(4).

jury, the court read the factual allegations from the August petition. The jury found that petitioner had established a statutory jurisdictional ground. The court entered an order of adjudication, and respondent claimed a timely appeal.

The termination hearing began in February 2013, and additional hearings were conducted in April and May. A foster-care worker testified at great length regarding respondent's failure to benefit from a plethora of offered services. The worker summarized that despite counseling and support group therapy, respondent remained hostile, aggressive, and emotionally unstable. Her frequent angry outbursts during supervised parenting time sessions led to early termination of several visits with her children. During her testimony, respondent denied a history of domestic violence and admitted being pregnant with Long's child (a condition that apparently arose after the current proceedings began). The circuit court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(g) and (j):

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> \* \* \*

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The court further concluded that termination would serve the children's best interests. See MCL 712A.19b(5).

Respondent also appealed the termination order, and this Court consolidated her two appeals.

## II. ANALYSIS

Respondent challenges the adjudication proceedings on two different due process grounds and contends that that the circuit court lacked clear and convincing evidence to support either statutory ground for termination. We address these contentions individually.

### A. PERSONAL JURISDICTION

Respondent first asserts that because she was never served with the December amended petition, the circuit court lacked personal jurisdiction over her. This jurisdictional flaw, respondent argues, violated her right to due process of law, rendered the proceedings "void," and compelled the circuit court to grant her mistrial motion. Because respondent was properly served with the initial petition and an accompanying summons, we find her jurisdictional argument unpersuasive.

We review de novo whether child protective proceedings complied with a respondent's constitutional rights. *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). Similarly, we review de novo whether a court has properly obtained personal jurisdiction over a party. *In re SZ*, 262 Mich App 560, 564; 686 NW2d 520 (2004).

In child protective proceedings, service of a summons and petition places a parent on notice of a petitioner's intention to remove a child from the home or terminate a parent's right to a child's care and custody. The Legislature requires that a parent named in a termination petition receive personal service of a summons before the court may conduct a hearing. MCL 712A.12. "[S]tatutes requiring service of notice to parents must be strictly construed." *In re Kozak*, 92 Mich App 579, 582; 285 NW2d 378 (1979). In *In re Brown*, 149 Mich App 529, 541-542; 386 NW2d 577 (1986), this Court

emphasized that personal service not only provides a parent notice, but also apprises the parent of the charges levied against him or her and affords a reasonable time to prepare a defense. In the absence of personal service or a waiver of personal service, jurisdiction is not established and the court's orders are void. *Id.* at 542. Notably, this Court determined in *Brown* that the fact that the respondent had actual notice did not cure the jurisdictional defect. *Id.* at 541.

The court rules reinforce the necessity of personal service. "In a child protective proceeding, a summons must be served on the respondent." MCR 3.920(B)(2)(b). MCR 3.921(B)(3) states that "[w]ritten notice of a hearing to determine if the parental rights to a child shall be terminated must be given to those appropriate persons or entities listed in subrule (B)(2)." Subrule (B)(2) includes "the parents of the child." MCR 3.921(B)(2)(c). And MCR 3.920(B)(4)(a) and (b) demand personal service unless the petitioner proves that it "is impracticable or cannot be achieved." The petition must set forth basic information about the children and the parents, as well as "[t]he essential facts that constitute an offense against the child" with a citation of the relevant provisions of the juvenile code. MCR 3.961(B)(1) through (4). These rules serve "to ensure due process to a parent facing . . . termination of his parental rights . . . ." *In re Rood*, 483 Mich 73, 93; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.).

Respondent was personally served with a summons and the original petition, which sought circuit court jurisdiction over the children.[6] The petition clearly communicated the nature of petitioner's allegations and described in detail the conduct underlying petition-

---

[6] The circuit court obtained jurisdiction over the *children* with the jury's verdict.

er's request for jurisdiction. The original petition sought termination of respondent's parental rights. Service of these documents afforded respondent with notice of the nature of the proceedings and conferred on the circuit court personal jurisdiction over her. Once personal jurisdiction was established, it did not evaporate merely upon the *filing* of the amended petitions. Alternatively stated, petitioner's preparation and filing of the amended petitions did not invalidate the personal jurisdiction that had already been obtained.[7]

Nor do we discern any due process grounds for a new adjudication trial arising from the circuit court's reading from an inapposite petition. The December petition contained several new averments, including that "[respondent] has a history of domestic violence with Mr. Desmond Long, [respondent's] boyfriend" and "Mr. Long was charged with, and pled to, Domestic Violence 2nd and Larceny $200-$1000, as a result of the incident on 07/15/2012." With the exception of Long's conviction, the allegations in the December petition referred precisely to the same facts and circumstances as had been set forth in the original petition. The initial petition placed respondent on notice of the evidence that would be presented at the trial. Accordingly, the circuit court's reading of the December petition qualifies as harmless error, and the court did not abuse its discretion by denying respondent's motion for a mistrial.

### B. EVIDENCE OF POSTPETITION EVENTS

Respondent next asserts that her due process rights were violated by the introduction of evidence—

---

[7] MCL 712A.11(6) permits amendment of a petition "at any stage of the proceedings as the ends of justice require."

primarily the jailhouse telephone conversation audiotapes—obtained after petitioner filed the August 7, 2012 petition. According to respondent, the circuit court incorrectly used the December petition as "a guideline" for the proofs, and by so doing erroneously permitted the petitioner to introduce evidence that should have been excluded because it postdated the original petition.

Neither the juvenile code nor the court rules mandates the exclusion of evidence concerning events that occur after a jurisdictional petition has been filed. Rather, the Michigan Rules of Evidence apply in adjudication trials. MCR 3.972(C)(1) provides, "Except as otherwise provided in these rules, the rules of evidence for a civil proceeding and the standard of proof by a preponderance of evidence apply at the trial, notwithstanding that the petition contains a request to terminate parental rights." "Relevance is the fundamental component of the law of evidence. Evidence that is irrelevant should not be admitted at trial. Evidence that is relevant should be admitted, unless barred by some other rule." 2 Jones, Evidence (7th ed), § 11:1, p 258. See MRE 401. If evidence of postpetition facts qualifies as relevant to an issue presented in an adjudication trial and is otherwise admissible under the rules of evidence, it may be admitted.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Evidence bearing on a witness's credibility is always relevant:

> Assume that a witness on the stand gives some testimony or that a counsel introduces an out-of-court declarant's hearsay statement as substantive evidence. As

soon as the testimony or hearsay statement is admitted, the credibility of the witness or declarant becomes a fact of consequence within the range of dispute at trial under Federal Rule 401. [1 McCormick, Evidence (7th ed), § 33, p 203.][8]

The August petition invoked two statutory grounds for jurisdiction: MCL 712A.2(b)(1) (asserting that respondent neglected or refused to provide the children "proper or necessary support, education, medical, surgical, or other care necessary for" their health or subjected them "to a substantial risk of harm to [their] mental well-being") and MCL 712A.2(b)(2) (asserting that respondent's "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for" the children to live). In support of these statutory grounds, the August petition alleged in relevant part that (1) on June 17, 2012, respondent and Long engaged in an episode of violence, (2) pursuant to a June 18, 2012 bond condition, Long was not supposed to have contact with respondent, (3) Long nevertheless was seen daily at respondent's residence, (4) on July 15, 2012, respondent accused Long of a violent attack during which she attempted to use a knife to defend herself, (5) ML disclosed during a forensic interview that she and respondent's children witnessed the July assault, and (6) respondent reported to CPS that she had no voluntary contact with Long after he posted bond and "has maintained that Mr. Long forced himself into her home on 7/15/12 and then assaulted her."

Petitioner structured its jurisdictional claim on the argument that respondent was unable to extricate herself from her relationship with Long and that their

---

[8] FRE 401 is identical with MRE 401.

inherently violent, abusive relationship endangered respondent's children. Respondent countered that Long had entered her home without permission on July 15, denied that her children had witnessed this altercation, and insisted that she had done everything in her power to distance herself from Long. Obviously, respondent's credibility was at issue given petitioner's contrary evidence. The jailhouse tapes bore directly on respondent's credibility. They tended to discredit her disavowal of voluntary contact with Long after the first assault.

The purpose of an adjudication is "to determine whether the child is neglected within the meaning of [MCL 712A.2(b)] . . . ." *In re Hatcher*, 443 Mich 426, 435; 505 NW2d 834 (1993). Ultimately, the question presented to the jury is whether a respondent's actions or inactions created an unfit environment for the children. A fact-finder may consider evidence gathered after the events cited in the petition if that evidence is relevant to a fact of consequence flowing from that question and otherwise admissible. Respondent's recorded conversations with Long related to her credibility and whether she had severed her relationship with Long before the third assault. That the evidence arose after the date of the petition did not render it irrelevant to issues of consequence to the action. And because respondent had notice of the existence of the tapes, see MCR 3.922(A)(1)(a), we find no due process violation.

In reaching this holding, we highlight the important distinction between evidence of an event supporting jurisdiction that was not alleged in a petition and evidence obtained after the petition was filed. Because the petition communicates to the respondent the specific charges that he or she faces, a court must not entertain evidence of neglectful acts that fall outside the petition's allegations. Our Supreme Court observed

in *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993), that due process safeguards apply during the adjudicative phase of a child protective proceeding:

> An adjudicative proceeding determines whether the [family] court may acquire jurisdiction over a child. Hence, the liberty interest at stake is the parents' interest in the management of their children.
>
> The procedures used in adjudicative hearings protect parents from the risk of erroneous deprivation of this interest.

Fundamentally, evidence gathered postpetition should be shared with the opposing party to avoid unfair surprise. Adherence to the rules governing discovery embodied in MCR 3.922 should avoid prejudice to either party's due process rights.

Here, respondent and her counsel were aware of the existence of the audiotapes and of the prosecutor's intent to use them at the trial. Further, the circuit court instructed the jury that "the statements of the man" heard on the tape constituted hearsay and were not to be considered as substantive evidence. Because respondent's recorded statements bore directly on her credibility, they were relevant regardless of the date she uttered them. We find no due process violation.

### C. THE TERMINATION DECISION

Finally, respondent contends that the circuit court lacked clear and convincing evidence to support either of the statutory grounds for termination of her parental rights. The clear-error standard controls our review of both the court's decision that clear and convincing evidence supported a ground for termination and that termination served the children's best interests. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286

(2009). Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake. *In re Conley*, 216 Mich App 41, 42; 549 NW2d 353 (1996). In reviewing the circuit court's decision, we also must give "due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

Respondent argues that her participation in services and her cessation of contact with Long demonstrated her ability to provide proper care for her children. The circuit court found to the contrary—that respondent had unsuccessfully participated in several domestic violence classes and refused to extricate herself from her relationship with Long. The record amply supports those findings. Further, the circuit court's detailed and thoughtful bench opinion painstakingly describes respondent's long history of engaging in domestic violence and her repetitive selection of violent, abusive partners. Given respondent's halfhearted efforts to escape the cycle of violence that she helped to create, and the resulting danger to her children, the circuit court did not clearly err by terminating her parental rights.

We affirm.

WHITBECK, P.J., and HOEKSTRA and GLEICHER, JJ., concurred.