*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DOBINE/JACKSON, Minors.

UNPUBLISHED
November 22, 2022

No. 360543
Wayne Circuit Court
Juvenile Division
LC No. 2021-000531-NA

*In re* JACKSON/VANPELT, Minors.

No. 360545
Wayne Circuit Court
Juvenile Division
LC No. 2021-000532-NA

*In re* JACKSON, Minor.

No. 360549
Wayne Circuit Court
Juvenile Division
LC No. 2021-000525-NA

Before: GLEICHER, C.J., and SERVITTO and YATES, JJ.

PER CURIAM.

In these consolidated appeals, father appeals as of right the trial court's orders terminating his parental rights under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*) to his eight minor children. On appeal, father argues that the Department of Health and Human Services (DHHS) did not present clear and convincing evidence to establish the statutory grounds for termination. Finding no clear error, we affirm.

-1-

# I. FACTUAL BACKGROUND

These appeals come to us after one of father's eight children,[1] then-12-year-old JJ, reported to father's girlfriend that father sexually abused her. JJ testified that father touched her "when I didn't want him to or give him consent to." She testified that the abuse began after she told her mother that she was bisexual. When JJ returned to father's home after a visit to her mother's home, father began asking her how she knew she was bisexual. She took a shower, and when she got out "he told me to come here and" "sit on the couch." She did so, wearing a towel. Father then began rubbing her vagina. He told JJ to lay down, and then "he put his private part in mine." She testified that father inserted his penis into her vagina, "[m]oving it in and out" for maybe ten minutes. Some of her siblings were home, but she did not tell them what happened right away. Instead, she went to the bathroom. JJ testified that this type of interaction occurred more than once. The last time it happened, in May 2021, father told her to go inside his room and lay on the bed.

JJ testified that father told her that she "shouldn't tell anyone [about the abuse] 'cause bad stuff can happen like you could go to jail," which made her think that father meant he could go to jail. JJ testified that "[h]e said that he would give me money or that he would—that he would let me not go to school for a couple of days if I need to break from or school work." He also bought her a "vape pen" after he caught her smoking. Eventually, JJ told her sisters and brothers about the abuse, and then she told father's girlfriend a "couple of days" or [m]aybe a week" after that.

After JJ shared her story, father's girlfriend confronted him and an "altercation" ensued between the two adults. Eventually investigators came to the home, but father told JJ not to tell them anything. JJ testified that father "didn't know I had told my brother and sisters, and so he was telling everyone that we just—that we were just going to say that [father's girlfriend] was mad at him so she was just trying to make up stories to make him mad or and [sic] stuff like that." Investigators found a "strong smell of urine" in the home, emanating from a bedroom where at least some of the children slept on air mattresses. Soon after this home visit, DHHS filed a petition to remove the children and terminate father's parental rights to each of the children. After a bench trial, the trial court terminated father's parental rights to all eight children. Father now appeals.

# II. LEGAL ANALYSIS

The trial court terminated father's parental rights to the eight children pursuant to MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ii*), which is a decision we review for clear error. *In re Dearmon*, 303 Mich App 684, 699-700; 847 NW2d 514 (2014). "Clear error exists when some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *Id*. At trial, DHHS bore the burden to present clear and convincing evidence that there existed a statutory ground for termination. *In re Gonzalez/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015). "In reviewing the circuit court's decision" to terminate parental rights, we "must give due regard to the trial court's special opportunity to observe the witnesses." *Id*. If we find that the trial court did not clearly err as to

---

[1] The children are divided in the various appeals before us by the identity of their mother.

the existence of one ground for termination, we need not address any additional grounds. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Under MCL 712A.19b(3)(k)(*ii*), termination is proper when "[t]he parent abused the child or a sibling of the child and the abuse included . . . [c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." "[A] parent need not be criminally charged with or convicted of criminal sexual conduct (CSC) for MCL 712A.19b(3)(k)(*ii*) to apply." *In re Schadler*, 315 Mich App 406, 410; 890 NW2d 676 (2016). In this case, there is no dispute that father is the parent of all eight children. JJ testified that father penetrated her vagina with his fingers and his penis on more than one occasion. The trial court found JJ's testimony credible, and "[i]t is not for this Court to displace the trial court's credibility determination." *HRC*, 286 Mich App at 460. Accordingly, the trial court did not clearly err when it found a factual basis to terminate father's parental rights to all eight children under this statutory ground.

Although father has not argued that the trial court committed clear error when it found that termination was in the children's best interests, we have reviewed the record and we are satisfied with the trial court's determination. "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted). "[T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home" are all factors for the court to consider when deciding whether termination is in the best interests of the child. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. On appeal, we focus on the child, rather than the parent. *Schadler*, 315 Mich App at 411.

In this case, the children were removed after JJ reported sexual abuse committed against her by father. At the best-interest hearing, JJ's mother testified that her three children no longer had a bond with father after not seeing or hearing from him for the duration of the proceedings (as the referee had ordered). JJ's mother testified that her children voiced no interest in seeing father. We acknowledge that no testimony was submitted regarding the other children, but the trial court found JJ's testimony about being sexually abused by father credible. The trial court explained that father's "outright depravity" of committing rape and incest against his daughter showed that "no child, biologolical or otherwise, would ever be safe around a person with that type of judgment." We will not disturb the trial court's credibility determination, see *HRC*, 286 Mich App at 460, so we readily accept the trial court's analysis of the children's best interests in termination of father's parental rights.

Affirmed in Dockets 360543, 360545, and 360549.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Christopher P. Yates

-3-