*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* G. MAUK, Minor.

UNPUBLISHED
December 28, 2023

No. 363245
Iosco Circuit Court
Family Division
LC No. 21-000811-NA

*In re* M. HALL, Minor.

Nos. 363246; 363247
Iosco Circuit Court
Family Division
LC No. 21-000810-NA

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-father appeals as of right the trial court orders terminating his parental rights to the minor children, GM and MH, under MCL 712A.19b(3)(k)(*ii*) (parent abused the child or a sibling of the child and the abuse included criminal sexual conduct involving penetration); MCL 712A.19b(3)(k)(*ix*) (parent sexually abused a child or a sibling of the child); and MCL 712A.19b(3)(m)(*i*) (parent convicted of first-degree criminal sexual conduct (CSC-I)). Respondent-mother appeals as of right the trial court order terminating her parental rights to the minor child, MH, under MCL 712A.19b(3)(a)(*ii*) (parent has deserted the child for 91 or more days) and MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist). Because the trial court did not properly conduct an adjudication hearing in this case, we vacate the orders terminating the parties' parental rights and remand for further proceedings.

## I. FACTUAL BACKGROUND

---

[1] *In re G Mauk Minor; In re M Hall Minor*, unpublished order of the Court of Appeals, entered October 18, 2022 (Docket Nos. 363245, 363246, and 363247).

An initial petition for termination of parental rights was filed in this case following MH's confession that father sexually abused her over a period of two years. The petition alleged that mother failed to protect MH from father's sexual abuse, and requested the termination of mother's and father's parental rights. Upon review of the petition, the trial court gave father the opportunity to challenge the criminal charges against him arising out of MH's claims of abuse, as he had not yet been criminally convicted of the alleged abuse. The trial court further ruled that mother's parental rights should not be terminated immediately, noting that she only had supervised visitation rights with MH when the abuse occurred. Consequently, the court believed that mother was not in a position to protect MH from father's abuse. The trial court took temporary jurisdiction over the children pursuant to MCL 712A.2(b), and it continued that temporary jurisdiction in subsequent orders.

Petitioner, the Department of Health and Human Services (DHHS), filed an amended petition in November 2021 alleging that mother deserted MH. Father was subsequently convicted of 13 counts of CSC-I for his assaults on MH. During that time, petitioner was unable to serve mother with a copy of the amended petition. In June 2022, the DHHS filed a second amended petition that reiterated the allegations against mother and included evidence of father's convictions. Petitioner was again unable to serve mother with a copy of the petition, and thus the trial court allowed petitioner to serve her with notice via publication. Thereafter, in the proceeding described below, mother and father stipulated to facts that would establish grounds for termination, and, following a combined adjudication and termination hearing, the trial court ruled that termination of their parental rights was in the children's best interests. This appeal followed.

II. ANALYSIS

Mother argues that her plea to the trial court's jurisdiction at the combined adjudication and termination hearing was invalid because the trial court failed to advise her of her rights under MCR 3.971(B) and because the court otherwise failed to properly assume jurisdiction over the children. We agree, and find that the orders terminating both mother's and father's parental rights must be vacated.

We review de novo as a question of constitutional law whether a child protective proceeding afforded a parent's right to due process. *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009). We also review de novo whether the trial court properly selected, interpreted, and applied the relevant statutes and court rules. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).[2]

---

[2] As discussed in this opinion, the trial court's errors in failing to advise mother of her rights under MCR 3.971(B) and other failures to abide by MCR 3.971 were sufficient to permit her to challenge the trial court's assumption of jurisdiction in her appeal from the order terminating her parental rights. The trial court did not advise mother that she could appeal errors in the trial court's adjudicatory process, notwithstanding her failure to challenge the trial court's conduct of the proceedings below. See MCR 3.971(C). For this reason, we disregard the traditional rules regarding preservation of issues, and elect to review this issue de novo. See *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704, 715 (2020); *Nuculovic v Hill*, 287 Mich App 58, 63; 783 NW2d 124 (2010).

As an initial matter, mother argues that she was not given adequate notice of the second amended petition. Notice of the petition was given by publication because mother could not be located for a lengthy period during the termination proceedings below. Mother claims that publication was never established by affidavit, and that consequently, service by publication never occurred. She further argues that as a result, she had no knowledge of the contents of the amended petition.

A review of the record and relevant law belies mother's claim on this point. It is true that the parent of a child who is the subject of a child protective proceeding is entitled to personal service of a summons and notice of the proceedings. MCL 712A.12, MCR 3.920(B), and MCR 3.921(B); see also *In re Dearmon*, 303 Mich App 684, 693; 847 NW2d 514 (2014). However, pursuant to MCR 3.920(B)(4)(b),

> If the court finds, on the basis of testimony or a motion and affidavit, that personal service of the summons is impracticable or cannot be achieved, the court may by ex parte order direct that it be served in any manner reasonably calculated to give notice of the proceedings and an opportunity to be heard, including publication.

The record indicates that the DHHS was unable to personally serve mother with the second amended petition because she refused to communicate with the DHHS. Additionally, mother apparently moved several times during this period. Further, although mother signed for at least one certified letter during the proceedings, she otherwise evaded service, and her whereabouts were at times completely unknown. The DHHS filed an affidavit outlining its efforts to locate and serve mother. The affidavit lists at least 12 attempts to personally serve her with the petition. The trial court ultimately authorized an ex parte motion to allow the DHHS to serve mother by publication. To that end, mother claims that the DHHS never filed an affidavit that conformed with MCR 2.106(G). The court rule provides that service by publication may be proven as follows:

> (1) Publication must be proven by an affidavit of the publisher or the publisher's agent
>
> (a) stating facts establishing the qualification of the newspaper in which the order was published,
>
> (b) setting out a copy of the published order, and
>
> (c) stating the dates on which it was published.

Contrary to mother's assertion, a copy of a notarized affidavit of publication is contained in the record. It includes the signature of the publisher's agent, her assertion that the Jackson Citizen Patriot is a public newspaper with general circulation in Jackson County, the nine dates on which the notice was published, and the full text of the notice. Thus, we conclude that notice was properly

given in this case.[3]  Mother's claim that she had no knowledge of the contents of the amended petition therefore lacks merit.

However, we agree with mother that the trial court failed to properly conduct an adjudication hearing in this case, and that remand is therefore necessary.  In *In re Yarbrough*, 314 Mich App 111, 122; 885 NW2d 878 (2016), this Court stated:

> Parents possess a fundamental interest in the companionship, custody, care, and management of their children, an element of liberty protected by the due process provisions in the federal and state constitutions.  US Const, Am XIV; 1963 Const, art 1, § 17.  Because child protective proceedings implicate "an interest far more precious than any property right," *Santosky v Kramer*, 455 US 745, 758-759; 102 S. Ct 1388; 71 L Ed 2d 599 (1982), "to satisfy constitutional due process standards, the state must provide the parents with fundamentally fair procedures."  *Hunter v Hunter*, 484 Mich 247, 257; 771 NW2d 694 (2009) (quotation marks and citation omitted).

However, "[a] parent's right to control the custody and care of her children is not absolute, as the state has a legitimate interest in protecting 'the moral, emotional, mental, and physical welfare of the minor' and in some circumstances 'neglectful parents may be separated from their children.' " *In re Sanders*, 495 Mich at 409-410, quoting *Stanley v Illinois*, 405 US 645, 652; 92 S Ct 1208; 31 L Ed 2d 551 (1972).  For that reason, although a parent is entitled to a hearing before their children are removed from their custody, once a court assumes jurisdiction over the children, the state's interest in protecting the children prevails over the parent's constitutional rights.  *In re Sanders*, 495 Mich at 406.

Mother argues that the trial court held a combined adjudication and termination proceeding that did not properly differentiate between the adjudicatory and dispositional phases.  Mother further contends the court failed to advise her of her rights under MCR 3.971.  Relatedly, she argues that her stipulation to certain facts at the combined hearing did not constitute a plea of admission to confer jurisdiction on the trial court.  We agree.

---

[3] Mother also notes on appeal that service by publication is becoming less useful as the world progresses into the digital age.  See, e.g., *In re Baby Boy Doe*, 509 Mich 1056 (2022) (MCCORMACK, C.J., concurring in part and dissenting in part).  We are certainly sympathetic to this argument.  However, this Court is an error-correcting court, and our "purpose is to determine if the trial court made an error when it rendered its decision." *Wolfenbarger v Wright*, 336 Mich App 1, 27; 969 NW2d 518 (2021).  On the basis of existing court rules and established caselaw, we find no error in the process used to provide mother with notice here.  We further note that in matters that may result in a departure from established law or court rule, we generally defer to our Supreme Court.  See *People v Woolfolk*, 304 Mich App 450, 475-476; 848 NW2d 169 (2014).  This is especially true in the instant matter, as the Michigan Supreme Court is solely responsible for the establishment and amendment of the Michigan Court Rules, which necessarily includes those concerning child protective proceedings.  See Const 1963, art 6, § 5.

-4-

As this Court explained in *In re Thompson*, 318 Mich App 375, 378; 897 NW2d 758 (2016):

> "Child protective proceedings have long been divided into two distinct phases: the adjudicative phase and the dispositional phase." *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). During the adjudicative phase, the court considers the propriety of taking jurisdiction over the subject child. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). This can be done in two ways. First, a parent may plead to the allegations in a jurisdictional petition, thereby bringing the child under the court's protection. MCR 3.971; *Sanders*, 495 Mich at 405; *AMAC*, 269 Mich App at 536. Second, the parent may demand a trial (bench or jury) to contest the allegations. MCR 3.972; *Sanders*, 495 Mich at 405; *AMAC*, 269 Mich App at 536.

"The adjudication divests the parent of her constitutional right to parent her child and gives the state that authority instead." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019). Although "the adjudicative phase is only the first step in child protective proceedings, it is of critical importance because the procedures used in adjudicative hearings protect the parents from the risk of erroneous deprivation of their parental rights." *In re Sanders*, 495 Mich at 405-406 (quotation marks, citation, and brackets omitted). Accordingly, the adjudication must precede the disposition, and although a dispositional hearing may immediately follow an adjudication, they may not be combined to the extent that there is no distinction between them. *In re AMAC*, 269 Mich App at 538. See also *In re Mota*, 334 Mich App 300, 315-316; 951 NW2d 704 (2020).

Mother's primary focus is on the adjudication process and the trial court's compliance with MCR 3.971. Because parents have the right to direct the care, custody, and control of their children, an adjudicatory plea must be knowingly, understandingly, and voluntarily made before a trial court may accept it. *In re Ferranti*, 504 Mich at 21. The trial court must advise the respondent of his or her rights on the record or in writing, as provided in MCR 3.971(B)(1) through (8), before the court may accept the plea. The advice of rights must specifically include an admonition that the "respondent may be barred from challenging the assumption of jurisdiction in an appeal from the order terminating parental rights if they do not timely file an appeal of the initial dispositional order . . . ." MCR 3.971(B)(8).

It is apparent from the record that none of the foregoing steps took place at the combined adjudication and termination hearing. In lieu of clearly separate adjudicative and dispositional phases, the following exchange took place between mother and the trial court:

> *The Court*: All right. And [mother], you understand with those stipulations, there are certain parts of the statue [sic] that allows for termination of parental rights that the agency won't have to prove by clear and convincing evidence. And those facts on themselves would constitute a basis for termination of your parental rights under the statue [sic]. Do you understand that?
>
> *[Mother]*: I do. I just ask the Court to give me another chance. Know that I am clean and sober.

*The Court*: Understood. You understand that you're going to have a right to a—like [father], for leave to appeal, that—that right lasts for 28 days. If you're going to ask [for] Court Appointed Counsel, you need to file that paperwork within 14 days. But there's no guarantee that an appeal will be successful. Do you understand that?

*[Mother]*: I do.

*The Court*: All right. And are you stipulating to those facts set forth by Mr. Schaiberger?

*[Mother]*: Yes. I am.

*The Court*: All right. [Mother], has anybody promised you anything other than what's been placed on the record for you to stipulate today?

*[Mother]*: No, your honor.

\* \* \*

*The Court*: All right. Court finds by stipulation that both parties come under 712a19b sub part 3 [sic]. [Mother], specifically, has stipulated to facts that would constitute under 3a. Child has been deserted and the parent has deserted the child for more than 91 days and not sought custody of the child during that period. Also given the facts, parent was respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of the initial disposition order. And the Court, by clear and convincing evidence, finds that the conditions that lead to the adjudication continue to exist and there's no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

Court makes those findings. Parties knowingly and voluntarily waive their right to a trial where the agency would've had to proven [sic] those facts by clear and convincing evidence.

The record reflects that the trial court made a number of serious errors that irreparably tainted the termination proceedings. It is clear that the trial court was not taking mother's plea of admission for purposes of establishing its jurisdiction. It instead elected to relieve the DHHS of its responsibility to establish grounds for termination by clear and convincing evidence by asking mother to stipulate to a number of incriminating facts without expressly explaining to her that the purpose of doing so was to establish facts supporting *termination*, rather than facts relevant to an *adjudicatory plea*, which never took place. Additionally, the trial court specifically referred to the DHHS's burden to establish the facts by clear and convincing evidence, which is the burden of proof for termination, not for adjudication. And instead of asking whether mother knew that her stipulations could be used in a later termination hearing under MCR 3.971(B)(4), the court simply asked if she understood that her stipulation *would* result in the termination of her parental rights.

Again, it is apparent from the record that the court completely skipped the adjudicatory phase of the termination proceedings. In the process, the trial court also failed to advise mother that by agreeing to the stipulations made on the record, she was giving up her right to a jury trial, her right to subpoena witnesses, and her right to cross-examine witnesses. See MCR 3.971(B)(3). Thus, the trial court never properly exercised jurisdiction in this case.

Additionally, the trial court did not accurately advise mother of her appellate right to challenge the trial court's attempt to exercise jurisdiction on appeal. See MCR 3.791(B)(8) and (C). Specifically, the court stated that mother could appeal, but made no distinction between an appeal of the court's jurisdiction and an appeal related to a dispositional order. Nothing in the record suggests that mother understood that there was a difference. Further, the trial court did not establish the accuracy of mother's "plea" by asking her questions to ensure that there was factual support underpinning any of the statutory grounds set forth in the petition. See MCR 3.971(D)(2). Indeed, mother made *no* statements and gave *no* testimony, other than her confirmation that she admitted to the stipulations made by her counsel.

This Court has held that when a petition requests the termination of a respondent's parental rights at the initial adjudication, a trial court may hold an adjudication and dispositional hearing together, with certain procedural safeguards. For example, in *In re Mota*, 334 Mich App at 309-310, the trial court conducted the adjudication trial and the dispositional hearing in one proceeding, and after all of the proofs, the trial court then ruled on both jurisdiction and termination. The respondent-father did not raise an objection to the procedure employed by the trial court, so the issue was not preserved. *Id*. at 311. On appeal, this Court ruled that the trial court erred by combining the two proceedings without any distinction between them. *Id*. at 317. This Court stated that the court rules contemplate the following as the required procedure when termination is requested in the petition:

> First, an adjudication trial is to be conducted with the court allowing the introduction of legally admissible evidence that is relevant to the exercise of jurisdiction under MCL 712A.2(b). At the conclusion of the adjudication trial, the court, in a bench trial, is to determine whether the DHHS [Department of Health and Human Services] established by a preponderance of the evidence a basis for jurisdiction under MCL 712A.2(b). If jurisdiction is not established, the proceeding is, of course, concluded. If the trial court finds that it has jurisdiction, the dispositional hearing in which termination is sought may immediately be commenced. At the termination hearing, the trial court, in rendering its termination decision under MCL 712A.19b, may take into consideration any evidence that had been properly introduced and admitted at the adjudication trial, MCR 3.977(E), along with any additional relevant and material evidence that is received by the court at the termination hearing, MCR 3.977(H)(2). [*In re Mota*, 334 Mich App at 316.]

Although the trial court in *In re Mota* failed to make a distinction between the adjudication and disposition, this Court nonetheless ruled that the errors did not affect the respondent-father's substantial rights or seriously affect the fairness, integrity, or public reputation of the proceedings because the evidence presented supported the trial court's rulings on both jurisdiction and termination. *Id*. at 318.

By contrast, in *In re Thompson*, 318 Mich App at 376-377, DHHS sought the termination of the respondent-mother's parental rights in the initial petition, and the trial court held a hearing that focused on the grounds for termination. The trial court ruled that DHHS established grounds for termination and that termination was in the child's best interests. *Id*. at 377. After the trial court made its ruling, DHHS asked the trial court to make a record of its findings on the issue of jurisdiction. *Id*. The trial court stated that, because it found clear and convincing evidence of a ground for termination, there was not " 'much question that there is more than a preponderance of evidence that the Court should take jurisdiction in this matter.' " *Id*. In considering the respondent-mother's claim on appeal, this Court explained the proceedings as follows:

> Respondent did not plead to jurisdictional grounds. A review of the hearing transcript reveals that no adjudication trial took place; rather, the court skipped right to termination. It would be a mischaracterization to say that termination occurred at the initial disposition. In order to have an initial disposition, there must first be an adjudication. [*Id*. at 378.]

This Court observed that deciding whether termination was appropriate before deciding whether jurisdiction was appropriate was putting "the dispositional cart before the adjudicative horse." *Id*. at 379. For that reason, and notwithstanding that the DHHS proved grounds for termination by clear and convincing evidence, this Court vacated the trial court's order as "procedurally unsound." *Id*.

This case is more akin to *In re Thompson* than to *In re Mota*. The record in this case does not indicate that the trial court simply made errors in failing to distinguish the adjudication of jurisdiction from the termination. Rather, the trial court did not address jurisdiction at all. It did not engage in anything that could be remotely identified as an adjudication. Although the trial court said the word "jurisdiction" while discussing father's stipulations, the trial court never stated that the stipulations amounted to a plea of admission for jurisdictional purposes, and it never mentioned the court's assumption of jurisdiction in its ruling. If the *In re Thompson* Court concluded that making jurisdiction an "afterthought" was putting the cart before the horse, 318 Mich App at 376, 379, the trial court's failure to rule on the issue of jurisdiction in this case amounts to a cart *without* a horse.

The question of jurisdiction is critically important because the procedures protect parents from the risk of error in the deprivation of their parental rights. Had the trial court made the distinction between adjudication and disposition by following MCR 3.971, this case would certainly have proceeded differently. But the trial court's failure to conduct the adjudicative phase of the child protective proceeding before it made its dispositional ruling is not one that can be overlooked.

Father did not raise this issue on appeal. Regardless, the order as to father's parental rights was issued after the same hearing and is thus tainted by the same procedural errors. Accordingly, reversal is warranted as to both parties.[4] On remand, the trial court must conduct a hearing or hearings where there is a clear delineation between the adjudication and the dispositional phases

---

[4] Given this resolution, we need not reach the parties' remaining arguments on appeal.

-8-

of the termination proceedings. See *In re Thompson*, 318 Mich App at 379 (noting that a "dispositional hearing could be conducted immediately following the adjudicative hearing, but the two could not be converged such that there was no distinction." (quotation marks and citation omitted)). This means that the parties must be fully advised of their rights under MCR 3.971. During the adjudication phase, the parties must each be given the option either to stipulate to jurisdiction, or they may alternatively demand a bench or jury trial on the matter. MCR 3.972. Regardless of what the parties choose, jurisdiction must be established by a preponderance of the evidence before the trial court can move on to the dispositional phase of the proceedings. *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020). Thereafter, the trial court may make its findings regarding whether clear and convincing evidence supports terminating the parties' parental rights. *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). Then, and only then, may the trial court make a ruling on the petition to terminate the parties' parental rights.

For the foregoing reasons, we conclude that the trial court erred by failing to distinguish between the adjudicative and dispositional phases of the termination proceeding in violation of the court rules governing termination proceedings and Michigan caselaw. Accordingly, we vacate the trial court's termination orders and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood