*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IN RE D. M. HOLDER-BASKIN, Minor.

UNPUBLISHED
August 08, 2025
10:46 AM

No. 373102
Oakland Circuit Court
Family Division
LC No. 2023-886352-NA

Before: PATEL, P.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor child, DMH-B, under MCL 712A.19b(3)(g) (failure to provide proper care and custody), (i) (parental rights terminated to siblings because of serious and chronic neglect and parent has failed to rectify conditions), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

Respondent has five other children. In previous proceedings, respondent's parental rights were terminated as to four of those five children. The remaining child is in the sole custody of his father.

The instant matter began when petitioner filed a petition in September 2023, shortly after DMH-B was born to respondent and his putative father.[1] Petitioner alleged that in her previous proceedings, respondent failed to complete services under a parent-agency treatment plan, was unable to provide suitable housing, and lacked interest in seeing her children. Petitioner further alleged that respondent was not addressing her mental health, did not "rectif[y] the safety concerns that resulted in her parental rights being previously terminated to four of her children," and DMH-B was "at a severe risk of harm" if left in her care.

---

[1] The record indicates that respondent was given notice of the petition by publication in late September 2023, a couple of weeks after the petition was filed.

DMH-B was placed in protective custody on an interim basis. After the preliminary hearing, the trial court authorized the petition, placed DMH-B in petitioner's care, and ordered supervised parenting time. In November 2023, petitioner filed an amended petition to terminate respondent's parental rights to DMH-B. After a bench trial addressing jurisdiction and statutory grounds, the trial court found by a preponderance of the evidence that statutory grounds for jurisdiction were appropriate under MCL 712A.2(b)(1) and (b)(2).[2] The trial court additionally found that there was clear and convincing evidence that statutory grounds for termination existed under MCL 712A.19b(3)(g), (i), and (j).

After a hearing on best interests, the trial court found by a preponderance of the evidence that it was in DMH-B's best interests to terminate respondent's parental rights. In a detailed 18-page opinion, the trial court reasoned that respondent is "lacking" in parenting ability and had an inconsistent record of attending supervised visitations; that DMH-B "is doing well" in foster care, and his foster-care mother expressed a desire to adopt the child; that respondent's compliance with the parent-agency treatment plan was "severely lacking"; and that the various therapists and other professionals involved in this matter opined that termination of respondent's parental rights was in DMH-B's best interests.

Respondent now appeals.

## II. ANALYSIS

## A. PERSONAL JURISDICTION

Respondent first contends that the trial court lacked personal jurisdiction over her because she was never served with either the original petition or the amended petition, which resulted in a jurisdictional defect and violated her due-process rights. We disagree.

"[W]e review de novo whether a court has properly obtained personal jurisdiction over a party." *In re Dearmon*, 303 Mich App 684, 693; 847 NW2d 514 (2014). "[I]ssues of statutory interpretation, as well as family division procedure under the court rules, are reviewed de novo." *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). Regarding respondent's argument that her due-process rights were violated, typically, "[w]hether proceedings complied with a party's right to due process presents a question of constitutional law that we review de novo." *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009). Because this argument is unpreserved, however, we review it for plain error affecting substantial rights. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018).

"In child protective proceedings, service of a summons and petition places a parent on notice of a petitioner's intention to remove a child from the home or terminate a parent's right to a child's care and custody." *In re Dearmon*, 303 Mich App at 693. "[P]ersonal service not only provides a parent notice, but also apprises the parent of the charges levied against him or her and affords a reasonable time to prepare a defense." *Id*. at 694. "In the absence of personal service or a waiver of personal service, jurisdiction is not established and the court's orders are void." *Id*. That is, "[a] failure to provide notice of a termination proceeding hearing by personal service as required by statute, [MCL 712A.12], is a jurisdictional defect that renders all proceedings in the trial court void." *In re Atkins*, 237 Mich App 249,

---

[2] Respondent's counsel also conceded that jurisdiction was appropriate, stating: "And to be quite frank, Your Honor, we'll concede jurisdiction. Jurisdiction is there."

250-251; 602 NW2d 594 (1999). The statutory requirement of personal service protects a parent's due-process rights. See *In re Dearmon*, 303 Mich App at 694.

MCL 712A.12 provides, in relevant part, that the respondent in child-protective proceedings "shall . . . be notified of the petition and of the time and place appointed for the hearing thereon, by personal service before the hearing[.]" Consistent with that statute, the parallel court rule governing service in such proceedings, MCR 3.920, generally provides that "a summons required under [MCR 3.920(B)(2)] must be served by delivering the summons to the party personally." MCR 3.920(B)(4)(a). However, MCR 3.920(B)(4)(b) allows for substituted service in certain cases:

> If the court finds, on the basis of testimony or a motion and affidavit, that personal service of the summons is impracticable or cannot be achieved, the court may by ex parte order direct that it be served in any manner reasonably calculated to give notice of the proceedings and an opportunity to be heard, including publication.

"Substituted service is sufficient to confer jurisdiction on the court." *In re SZ*, 262 Mich App 560, 565; 686 NW2d 520 (2004). In addition, "[t]he appearance and participation of a party at a hearing is a waiver by that party of defects in service with respect to that hearing unless objections regarding the specific defect are placed on the record." MCR 3.920(H).

In this case, during the adjudication phase, the trial court addressed the issue of service. Specifically, after a bench conference, the trial court and counsel for the respective parties agreed that there was no failure of service with regard to the original petition or the amended petition:

> *The Court*: All right. So we had a brief break to discuss the service issue. Do we have resolution on that?
>
> [*Petitioner's Counsel*]: Good morning, Your Honor. Yes, we do have a resolution regarding the service issue. It has been determined that service on Mother was good.
>
> * * *
>
> *The Court*: . . . So the petition was served, the amended petition was served, and the summons was served; correct?
>
> [*Petitioner's Counsel*]: That is my understanding. Thank you.
>
> *The Court*: Correct?
>
> [*Respondent's Counsel*]: Correct.
>
> * * *
>
> *The Court*: Does anybody have any service-related issues whatsoever about us moving forward with today's trial? [Petitioner's Counsel]?
>
> [*Petitioner's Counsel*]: No, your Honor.

*The Court*: [Respondent's Counsel]?

*Respondent's Counsel*: No.

\* \* \*

*The Court*: So there are no issues for us to proceed today. There are no appellate issues that you view on notice or service regarding those issues as we sit here today. Is that correct, [Respondent's Counsel].

[*Respondent's Counsel*]: No. She was served with the summons and the petition by the foster care worker.[3]

Consequently, given the fact that respondent's counsel repeatedly acknowledged on the record that service was proper, respondent's argument on appeal as to failure of service and a corresponding lack of personal jurisdiction is waived. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) ("Respondent may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit respondent to harbor error as an appellate parachute."). Moreover, as explained by the trial court and the parties on the record, there was no failure of service. Simply put, respondent was given service of the original petition by publication, see MCR 3.920(B)(4)(b), and belated personal service, see MCR 3.920(B)(4)(a),[4] and her counsel acknowledged on the record that she had been served with the amended petition and had notice of the adjudication hearing. Accordingly, there was no violation of statute, court rule, or due process with regard to service. Relief is not warranted for this issue.[5]

## B. BEST INTERESTS

Respondent next contends that the trial court erred by finding that it was in DMH-B's best interests to terminate her parental rights. We disagree.[6]

---

[3] While respondent's counsel replied to the trial court's prompt with the word "no," the context shows that counsel intended to communicate that she had no appellate issues with regard to service.

[4] The record includes a proof of service dated November 13, 2023, indicating that respondent was personally served with the original petition at 10:00 a.m. on November 9, 2023. Ideally, that personal service would have been accomplished earlier but, in any event, respondent timely received service by publication.

[5] We also note the possibility that respondent waived any issue of service by personally appearing at the adjudication hearing, see MCR 3.920(H), but it is unnecessary to reach that question.

[6] Respondent's statement of questions presented only pertains to service and best interests. However, respondent summarily argues in her appellate brief that the trial court additionally erred by (1) exercising jurisdiction, (2) finding statutory grounds to terminate her parental rights, and (3) disregarding the fact that petitioner failed to provide reasonable efforts for reunification. Respondent's failure to identify these arguments in the statement of questions presented renders them waived on appeal. See *In re Rippy*, 330

-4-

"We review for clear error a trial court's factual finding that termination of a parent's parental rights is in the child's best interests." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citation omitted).

Regarding best interests, "[e]ven if the trial court finds that the [petitioner] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the child[]." *Id.* (quotation marks and citation omitted).

> In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party. [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home, are all factors for the court to consider when deciding whether termination is in the best interests of the child. The trial court may also consider the child's age, inappropriate parenting techniques, and continued involvement in domestic violence. It may further consider visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption. [*Id.* at 276-277 (quotation marks and citations omitted).]

"[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013).

Here, a preponderance of the evidence supported the trial court's finding that it was in DMH-B's best interests to terminate respondent's parental rights. Respondent only attended about 18 of her 45 scheduled parenting-time sessions. Although transportation nominally was a barrier to respondent's attendance at these sessions, petitioner offered gift cards and bus passes to respondent. Moreover, while the testimony indicated that respondent acted somewhat appropriately with DMH-B during the sessions that she did attend, the foster-care worker had to encourage respondent to spend one-on-one time with DMH-B because she was "not focusing" on him and spending time on her phone instead. The foster-care worker opined that respondent and DMH-B did not share a mutual bond. The foster-care worker

---

Mich App 350, 362 n 5; 948 NW2d 131 (2019). In any event, we briefly note that these arguments are meritless. Concerning jurisdiction, respondent's counsel conceded below that jurisdiction was appropriate. Concerning the statutory grounds for termination, the trial court observed that respondent "only attended 18 out of her 45 scheduled parenting-time visits," refused home evaluations, and lacked income and "safe and stable housing." The trial court also observed that respondent did not take "any additional steps to address her mental health issues." Given these facts, the trial court did not clearly err by finding that, at a minimum, MCL 712A.19b(3)(j) was proven by clear and convincing evidence. See *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013). Lastly, concerning petitioner's statutory obligation to provide reunification services, see MCL 712A.19a(2), the record reveals several substantive reunification services that were unsuccessfully offered to respondent.

acknowledged that respondent had a bond with DMH-B, but it was not reciprocal because he did not "express [a] strong desire to be with [respondent] when they are together."

Even assuming that there was a bond between respondent and DMH-B, the parent-child bond is only one factor for the trial court to consider. See *id*. Although respondent was referred to Detroit Housing Services, she did not have housing. A CPS specialist stated that respondent did not rectify her prior safety concerns and that DMH-B was at "severe risk of harm" in her care. Respondent lacked a permanent address and, since September 2023, respondent was "couch surfing . . . between different homes with friends." The foster-care worker did not know where respondent lived and did not have a "clue" if her current living situation was suitable. Respondent did not have any income, but "reported a couple times" that she received supplemental security income. However, respondent never verified her income or receipt of public benefits.

Respondent also did not attend any doctor visits or complete any parenting classes. The foster-care worker stated that respondent lacked the capacity to "do right" by DMH-B because she did not possess a "basic understanding of child development." The foster-care worker continued: "[Respondent] displays a great desire to want to do well. . . . [S]he does not always know necessarily when a diaper needs to be changed or . . . how many diapers he would go through during a day or . . . what is appropriate for his food[.]"

Further, DMH-B remained in a nonrelative placement with an unrelated foster parent since the date of removal. DMH-B was "thriving" and having his needs met "medically, physically, [and] emotionally[.]" DMH-B established a strong bond with his foster parent. The foster parent was willing to adopt DMH-B. The foster-care worker recommended that it was in DMH-B's best interests to be adopted by the foster parent.

Accordingly, given these facts, which are similar to the facts presented in the previous termination proceedings, the trial court did not clearly err by finding that termination of respondent's parental rights was in DMH-B's best interests.

III. CONCLUSION

Respondent waived any issue regarding failure of service. Regardless, respondent was personally served the original petition and the amended petition, and her due-process rights were not violated. Moreover, the trial court's finding that termination of respondent's parental rights was in DMH-B's best interests was not clearly erroneous. We affirm.

/s/ Sima G. Patel
/s/ Michael J. Riordan
/s/ Brock A. Swartzle