*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
October 15, 2024
2:55 PM

*In re* C. WENTWORTH, Minor.

No. 369278
Marquette Circuit Court
Family Division
LC No. 13-009673-NA

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his minor child, CW, under MCL 712A.19b(3)(c)(*i*). We affirm.

## I. FACTS

After serving a prison term for assault, respondent was released from prison in 2012. By the time CW was born in 2013, respondent once again was in prison serving a sentence of 7 to 20 years after being convicted of conspiracy to operate a methamphetamine laboratory. CW was removed from the care of respondent and SB, CW's mother, shortly after his birth and placed in foster care. When CW was two and a half years old, he was placed in a guardianship with his maternal uncle and aunt.

Respondent was released on parole in 2020. The guardianship was dissolved, and CW was placed with respondent and SB. During this time, CW's uncle and aunt cared for CW on weekends. After five months, CW once again was removed from respondent's and SB's home due to their continued substance abuse, criminal activity, incarceration, and possession of illegal substances and drug paraphernalia in the home that was accessible to CW. The petition seeking to remove CW from respondent's and SB's care alleged that SB was found in possession of methamphetamine and drug paraphernalia, and that respondent had been arrested for absconding from parole, possession of methamphetamine, and possession of a non-prescribed non-narcotic drug. Respondent returned to prison to serve a sentence of 2 to 20 years, with an earliest possible release date of November 2, 2024. CW's uncle and aunt resumed care of CW as foster parents.

-1-

Petitioner, the Department of Health and Human Services (DHHS), sought termination of respondent's and SB's parental rights. The trial court terminated respondent's[1] parental rights under MCL 712A.19b(3)(c)(*i*), finding that the conditions that led the trial court to assume jurisdiction of CW, namely, respondent's substance abuse, criminality, incarceration, and inability to provide proper care for CW, continued to exist and that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering CW's age. The trial court also found that termination of respondent's parental rights was in CW's best interests. At the time of termination, CW was ten years old, had lived with his uncle and aunt for most of his life, and had been under the direct care of respondent for only five months of his life. Respondent now appeals.

## II. DISCUSSION

## A. STATUTORY BASIS

Respondent contends that the trial court erred by finding that termination was warranted under MCL 712A.19b(3)(c)(*i*). We disagree.

To terminate a parent's rights to his or her child, the trial court must find that a statutory basis warranting termination under MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). We review for clear error the trial court's factual findings and its determination that a statutory basis for termination has been proven by clear and convincing evidence. *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018). The decision to terminate parental rights is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). We afford the trial court's dispositional orders "considerable deference on appellate review," *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014), and this Court will not find a trial court's decision clearly erroneous unless it is more than possibly or probably incorrect, *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

In this case, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), which provides:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

---

[1] SB released her parental rights to CW during the termination proceedings.

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Here, the conditions leading to adjudication were respondent's incarceration, continued use and trafficking of methamphetamine in the family home when not incarcerated, and respondent's neglectful parenting of CW, which included the child frequently missing school while in respondent's care. The record amply supports the trial court's finding that respondent did not rectify those conditions. When respondent was released on parole and gained custody of CW in 2020, respondent violated his parole, engaged in criminal activity, which included drug use and drug trafficking, and very quickly became incarcerated once again. Respondent continued to be incarcerated at the time of termination in December 2023.

The record also supports the trial court's finding that there is no reasonable likelihood that the conditions would be rectified within a reasonable time given CW's age. At the termination hearing, respondent denied responsibility for his criminal activity that led to his incarceration. He denied using methamphetamine even though he tested positive for methamphetamine, asserting that he had swallowed the substances in his possession when he was arrested. He also claimed that he was charged with possession of methamphetamine only because someone left a scale with residue in his truck and, another time, someone "tossed" methamphetamine on the seat of his truck. Respondent explained that the methamphetamine found in his home possibly belonged to a guest whose drugs might have fallen between the couch cushions. Once incarcerated, respondent's conduct did not demonstrate the self-control predictive of early release and necessary to parent a child. Officers at the prison testified that respondent did not comply with prison rules while incarcerated, was volatile and disruptive, and exhibited threatening behavior.

Respondent contends that the trial court should not have considered evidence of his misconduct in prison because the trial court initially excluded that evidence because petitioner failed timely to provide the documentation to respondent before the hearing. A review of the record indicates that the trial court excluded evidence on direct examination regarding respondent's misconduct tickets while incarcerated, but stated that the documentation of respondent's misconducts potentially was admissible as rebuttal evidence. In rebuttal, the DHHS caseworker used a misconduct report to refresh her recollection, as allowed by the court. Respondent provides no legal support for his argument that use of the misconduct report in this way was improper. See *In re JCR*, ___ Mich App ___, ___ ; ___ NW3d ___ (2024) (Docket No. 367472); slip op at 7 n 6 (an appellant may not leave it to this Court to search for authority to support a position).

Respondent also contends that the trial court erred by considering his prison misconduct because the misconduct incidents were "new" allegations that required the filing of a supplemental petition. In determining whether a statutory basis for termination has been demonstrated under MCL 712A.19b(3), the trial court may consider "any evidence that had been properly introduced and admitted at the adjudication trial . . . , along with any additional relevant and material evidence that is received by the court at the termination hearing." *In re Mota*, 334 Mich App 300, 316; 964 NW2d 881 (2020). Here, the trial court considered defendant's misconduct while incarcerated not as a new allegation, but rather as relevant to his potential for early release, his ability to refrain from conduct that would result in future incarcerations, and his ability to parent CW. The trial

court noted that "the demonstration of rule breaking behavior while incarcerated leads this Court to the reasonable conclusion that [respondent] is a risk for continued criminal behavior upon release." We find no error.

We conclude that the trial court also did not clearly err by finding no reasonable likelihood that the conditions that led to adjudication would be rectified within a reasonable time considering CW's age. The record indicates that CW will be 11 years old in November 2024 (the time of respondent's earliest possible release) and that transitioning CW to respondent's care likely would take up to one year after respondent's release, given respondent's lengthy absence from CW and the paucity of time CW has spent in respondent's care. The foster care caseworker testified that the last time CW was returned to respondent, respondent failed to cooperate with the mental health and substance abuse services offered. Regardless of when respondent is released from incarceration, considerable time would be required for him to demonstrate that he could establish and maintain an acceptable home for CW and overcome the many barriers to reunification. We conclude that the trial court did not clearly err by finding that petitioner had established the ground for termination set forth in MCL 712A.19b(3)(c)(*i*).

## B. REASONABLE EFFORTS

Respondent contends that petitioner failed to make reasonable efforts to reunify him with CW by failing to facilitate video visits with CW during his incarceration. We disagree that petitioner failed to make reasonable efforts to reunify respondent with CW.

Under Michigan's Probate Code, the Department of Health and Human Services (DHHS) must make reasonable efforts to reunify a family before seeking to terminate a parent's parental rights, *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), except in cases involving aggravated circumstances, *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022); MCL 712A.19a(2). We review the trial court's finding regarding reasonable efforts for clear error. *In re Sanborn*, 337 Mich App at 258.

To fulfill the duty to make reasonable efforts, DHHS must create a service plan outlining the steps that it and the parent will take to rectify the issues that led to court involvement and to achieve reunification. *In re Hicks/Brown*, 500 Mich at 85-86. To evaluate whether DHHS made reasonable efforts to reunify an incarcerated parent with his or her child, we consider whether the respondent parent was "afforded a meaningful and adequate opportunity to participate." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). In addition, a respondent is required to demonstrate that he or she would have fared better if the service in question had been offered. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005).

In this case, the trial court found that petitioner expended reasonable efforts toward reunification despite respondent's incarceration, and specifically found that petitioner "made more than reasonable efforts" with regard to telephonic communication between respondent and CW. The record supports the trial court's finding. The foster care worker testified that the barrier to video visits between respondent and CW was an MDOC policy that does not permit foster care workers to schedule video visits with inmates. Although initially petitioner hoped to facilitate video calls between respondent and CW because SB had been able to access the video-visitation program as respondent's wife, the foster care worker testified that SB was sporadic in cooperating

with the video visits and that without SB's cooperation the MDOC would not permit the video visits. The foster care worker also testified that respondent's frequent moves from one facility to another exacerbated the difficulty of communicating with prison officials about the proposed visits. We also note that while the case service plan for respondent included video visits with CW, at the plea hearing, respondent's attorney stated with respect to the case service plan, that "[r]espondent . . . understands that visitation may still be regulated by the rules of the MDOC and in the prison in which he is lodged." In this case, respondent has not demonstrated that failure to provide video visitation with CW demonstrates a failure to make reasonable efforts to reunify respondent with CW, nor that he would have been better able to regain custody of CW had the video conferences been provided.

## C. BEST INTERESTS

Respondent contends that the trial court clearly erred by concluding that termination of respondent's parental rights was in CW's best interests. Again, we disagree.

When a trial court finds that the petitioner has established a statutory basis for termination of a parent's parental rights, the trial court must terminate the parent's parental rights if a preponderance of the evidence demonstrates that termination is in the child's best interests. MCL 712A.19b(5); *In re Medina*, 317 Mich App 219, 236-237; 894 NW2d 653 (2016). We review the trial court's decision regarding a child's best interests for clear error. *In re Dearmon*, 303 Mich App 684, 699; 847 NW2d 514 (2014).

To determine whether termination of parental rights is in a child's best interests, the trial court must weigh the available evidence and consider a wide variety of factors, such as the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages of the foster home over the parent's home, the length of time the child was in care, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the parent's compliance with the case service plan. See *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015). The trial court also should consider the child's safety and well-being, including the risk of harm to the child if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). The possibility of adoption of the child is also a proper consideration for the trial court. *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The child is the focus of the best-interests determination, not the parent. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022).

In this case, the trial court considered the evidence of respondent's incarceration, repeated criminal conduct, substance use, aggressive and disruptive behavior while incarcerated, CW's failure to thrive in respondent's care, and CW's greatly improved behavior and progress at school when living with his uncle and aunt, who provided consistent care and stability. Additionally, the record indicates that consistency in his care is a major issue for CW, who suffers from ADHD and "act[s] out" when his care is not consistent. At the time of termination, CW was thriving in the care of his foster parents. The record indicates that CW told various people that he did not want to live with respondent but instead wanted to live with his uncle and aunt, who were seeking to adopt him. Contrary to respondent's assertion that the trial court improperly considered the possibility that CW would be adopted by his uncle and aunt, the possibility of adoption is an allowable factor for the trial court's consideration. See *In re White*, 303 Mich App at 714. The

trial court did not clearly err by determining that termination of respondent's parental rights was in CW's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado